J-A04011-21

2021 PA Super 141

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WAYNE PRATER | |
| Appellant | No. 673 EDA 2020 |

Appeal from the PCRA Order Entered January 28, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000375-2011

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WAYNE PRATER | |
| Appellant | No. 674 EDA 2020 |

Appeal from the PCRA Order Entered January 28, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0002465-2010

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WAYNE PRATER | |
| Appellant | No. 676 EDA 2020 |

Appeal from the PCRA Order Entered January 28, 2020
In the Court of Common Pleas of Philadelphia County

Criminal Division at No: CP-51-CR-0008413-2010

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WAYNE PRATER | |
| Appellant | No. 677 EDA 2020 |

Appeal from the PCRA Order Entered January 28, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0008416-2010

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WAYNE PRATER | |
| Appellant | No. 678 EDA 2020 |

Appeal from the PCRA Order Entered January 28, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000374-2011

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WAYNE PRATER | |

|  |  |  |
|---|---|---|
| Appellant | | No. 679 EDA 2020 |

Appeal from the PCRA Order Entered January 28, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0012511-2011

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.[*]

OPINION BY STABILE, J.:                                    **FILED JULY 9, 2021**

Appellant, Wayne Prater, filed a petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, claiming that his original sentence was illegal and seeking a new trial on the basis of ineffective assistance of counsel.  The PCRA court held that Appellant's original sentence was illegal and imposed a new sentence, but it rejected Appellant's claims of ineffective assistance.  Appellant moved for reconsideration of his new sentence, which the court denied.  He then filed an appeal to this Court challenging his new sentence as well as the denial of his ineffective assistance claims.  We affirm.

Appellant stands convicted of multiple crimes against his estranged girlfriend and the mother of his children.  On September 15, 2009, the victim obtained a Protection From Abuse order that evicted Appellant from the victim's home and directed Appellant to refrain from any contact with her.  On November 30, 2009, Appellant made several harassing phone calls to the victim, smashed her car windows, threw a brick through her home window and slashed her tires. On December 2, 2009, Appellant broke into the victim's home and caused water to pour from the bathtub that he plugged up on the

_____

[*] Retired Senior Judge assigned to the Superior Court.

second floor to the first floor through the ceiling. Later that same day, when police spotted Appellant, he fled, resisted arrest, and threatened the arresting officers. On August 16, 2010, Appellant demanded money from the victim and physically assaulted her. On August 18, 2010, police informed the victim that someone had called 911 claiming that she was going to kill herself with a bomb. On August 19, 2010, the victim returned home to find her house again flooded and a pipe bomb in her basement. Police found Appellant's fingerprint on a bag containing an incendiary fuse nearby. On August 20, 2010, police again arrested Appellant and found a cellphone on him that was used to call 911 to inform authorities that the victim supposedly intended to kill herself with a bomb.

Appellant was charged in six separate cases, which the court consolidated for trial. The jury found Appellant guilty of three counts of contempt of a court order; two counts each of assault, harassment, burglary, and terroristic threats; and one count each of criminal trespass, criminal mischief, resisting arrest, stalking, endangering another person, aggravated assault, risking a catastrophe, possession of an instrument of crime, and making offensive weapons. On November 2, 2012, the court sentenced Appellant to an aggregate term of 35½ to 71 years of imprisonment, including a sentence of 10 to 20 years of imprisonment for risking a catastrophe, a third-degree felony under 18 Pa.C.S.A. § 3302. On April 7, 2014, this Court affirmed on direct appeal. Appellant did not file a petition for allowance of appeal with our Supreme Court.

- 4 -

On March 15, 2015, Appellant filed a *pro se* PCRA petition. Counsel was appointed and was permitted to withdraw without filing an amended petition. New counsel was appointed and submitted a letter stating that the issues in Appellant's petition were meritless and there were no other issues of arguable merit that could be raised. On May 31, 2017, the PCRA court dismissed Appellant's petition. Appellant appealed to this Court, which held that counsel's analysis of the PCRA claims had been cursory and incomplete and remanded the matter to the PCRA court for further consideration. In 2019, new PCRA counsel filed an amended petition and supplemented that petition several times.

In the amended PCRA filings, Appellant contended that his sentence of 10 to 20 years of imprisonment for risking a catastrophe was illegal because this offense is a third-degree felony carrying a maximum sentence of 7 years of imprisonment. In the same filings, Appellant raised multiple claims of ineffective assistance of counsel during trial.

On January 28, 2020, the PCRA court convened a video hearing on Appellant's PCRA claims. The PCRA court determined that it would resentence Appellant to 3½ to 7 years of imprisonment for risking a catastrophe while keeping all other sentences the same, resulting in a new aggregate sentence of 29 to 58 years of imprisonment. Appellant's attorney requested that the new sentence for risking a catastrophe run concurrently with the other sentences, thereby reducing Appellant's total sentence to 25½ to 52 years of

imprisonment. N.T., 1/28/20, at 21-22. The Commonwealth objected to this request.

The court denied counsel's request for a concurrent sentence on the charge of risking a catastrophe, relying on its comment at the 2012 sentencing that an above-guidelines sentence was proper due to Appellant's lack of remorse and the threat he posed to the victim. *Id.* at 29-31.

After counsel informed Appellant of his right to appeal his sentence, the Commonwealth asked the court to address Appellant's claims of ineffective assistance. Appellant's counsel objected on the ground that the appeal from the new sentence would be a direct appeal, and therefore, the Superior Court would not permit Appellant to raise claims of ineffective assistance in the appeal. *Id.* at 33-34. The court heard argument on the ineffective assistance claims and denied relief. *Id.* at 34-38.

On January 28, 2020, the PCRA court entered a written order granting relief on the sentencing issue and denying relief on the ineffective assistance claims. On the same date, the court issued a new written judgment of sentence imposing a sentence of 3½ to 7 years of imprisonment for risking a catastrophe while keeping the sentences on all other counts the same as in Appellant's original sentence.

On February 3, 2020, Appellant filed motions seeking reconsideration of his new sentence. On February 12, 2020, the court denied these motions. On February 19, 2020, in each of the six consolidated cases, Appellant filed a notice of appeal from both his new judgment of sentence and the denial of

PCRA relief on his ineffectiveness claims. Both Appellant and the court complied with Pa.R.A.P. 1925. By order dated May 5, 2020, this Court consolidated all six of the above-captioned appeals for appeal purposes.

Appellant raises the following issues in these appeals:

I. Is the appellant entitled to a new sentence hearing when the sentence of [29 to 58] years in prison was manifestly unreasonable, unjust and abuse of discretion when it was outside the guidelines and the protection of the community, public, complainant and the record of the appellant do not require such a draconian sentence?

II. Did the trial court err in denying the appellant an evidentiary hearing when appellant asserted material issue of fact that appellate counsel on direct appeal failed to address the issue of speedy trial which was preserved by the trial counsel in the trial court?

III. Did the trial court err in denying the appellant an evidentiary hearing when appellant raised a material issue of fact that trial defense was ineffective in failing to request a mere presence charge to the jury?

IV. Did the trial court err in denying the appellant an evidentiary hearing when appellant asserted a material issue of fact that trial defense counsel was ineffective in failing to call the defense witnesses Balance Jones and Frank Jones instead of offering a stipulation of their testimony when these witnesses would have directly contradicted and refuted the complainant's testimony that the appellant attacked the complaint in their presence?

V. Did the trial court err in denying the appellant an evidentiary hearing when appellant raised a material issue of fact that trial defense counsel was ineffective in failing to call the fact witness Eric Bell whose testimony would have refuted the testimony of the complainant?

VI. Did the trial court err in denying the appellant an evidentiary hearing when appellant raised a material issue of fact that trial defense counsel failed to call an alibi witness that counsel knew

existed and where counsel filed an alibi notice concerning this witness prior to trial?

VII. Did the trial court err in denying the appellant an evidentiary hearing when appellant raised a material issue of fact that trial defense counsel failed to file a motion to suppress information that was secured by police from the appellant's alleged cell phone when the police did not secure a search warrant?

VIII. Did the trial court err in denying appellant an evidentiary hearing when appellant raised the issue that trial defense counsel was ineffective for failing to file a motion *in limine* disallowing the ATF report that contained confusing and misleading information?

IX. Should these consolidated appeals be quashed when they were consolidated by this Court and all the issues are the same and all these cases were consolidated in the trial court for trial, sentence and PCRA proceedings?

Appellant's Brief at 2-3.

As a preliminary matter, we address our jurisdiction to decide the issues raised on appeal. During the January 28, 2020 hearing, after the court announced Appellant's new sentence, Appellant's counsel argued that the court should not address Appellant's claims of ineffective assistance, because "the Superior Court is going to say they're not going to hear them because it's a direct appeal. So I'm just telling you . . . they've done this to me in the past because I had clients that wanted me to raise these issues. And I did and the Superior Court [said] we're not hearing this." N.T., 1/28/20, at 33-34. In other words, counsel contended that the entry of a new sentence was a trial court proceeding, and therefore, PCRA proceedings such as claims of ineffective assistance cannot take place until the conclusion of Appellant's direct appeal from his new sentence. We disagree.

The court entered two orders. First, it disposed of Appellant's PCRA petition by denying all ineffectiveness claims while granted sentencing relief. Second, it immediately proceeded to resentence Appellant by entering the new judgment of sentence now also being appealed. With regard to the first order, Pa.R.Crim.P. 901 provides that an order finally disposing of a petition for post-conviction relief shall constitute a final order for appeal purposes. Appellant's appeal from the January 28, 2020 order denying the ineffectiveness claims and granting sentencing relief disposed of all claims raised in Appellant's PCRA petition. Appellant properly and timely appealed from that order within 30 days of its entry. Pa.R.A.P. 903. With regard to the second order, the new judgment of sentence, sentencing and post-sentence motion proceedings are "trial court function[s]," not PCRA proceedings. *Commonwealth v. Gaines*, 127 A.3d 15 (Pa. Super. 2015) (*en banc*) (plurality opinion). Appellant properly and timely filed a motion challenging his new judgment of sentence, and when that motion was denied on February 12, 2020, Appellant timely filed a direct appeal from that judgment of sentence.

Counsel's argument to the trial court that it could not have disposed of Appellant's post-conviction ineffectiveness issues until the conclusion of Appellant's direct appeal from his new sentence is misplaced. The rule that a court may not entertain post-conviction proceedings related to a judgment of sentence that is pending on direct appeal, *Commonwealth v. Holmes*, 79

A.3d 562, 563 (Pa. 2013),[1] is not applicable here because Appellant is appealing from a new judgment of sentence unrelated to the judgment of sentence that was the subject of Appellant's post-conviction proceedings. Appellant properly filed separate and timely notices of appeal from the final order disposing completely of his post-conviction petition claims and a direct appeal from his new judgment of sentence. We therefore now proceed to address the issues raised in both appeals in these consolidated proceedings.[2]

Appellant's arguments II through VIII all raise claims of ineffective assistance of counsel. To prevail on a claim of ineffective assistance, the petitioner must plead and prove that the underling claim is of arguable merit; that counsel had no reasonable strategic basis for the disputed action or inaction; and that there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's error.

_____

[1] Our Supreme Court promulgated a new rule, Pa.R.A.P. 341(f), effective July 1, 2021, that provides a PCRA order that (1) grants, denies, dismisses, or otherwise finally disposes of a petition for post-conviction collateral relief, or (2) grants sentencing relief, but denies, dismisses, or otherwise disposes of all other claims within a petition for post-conviction collateral relief, shall constitute final orders for purposes of appeal.

[2] Where, as here, a petitioner appeals both from the denial of post-collateral relief and a new judgment of sentence, the prudent course for this Court is to decide first the post-conviction claims before addressing the new sentencing claims. This is because if we find merit in post-conviction claims and grant a new trial, the new judgment of sentence would be vacated. Petitioners who find themselves in this situation need to be diligent about informing this Court in their docketing statements of related actions in order for us to consolidate related appeals for disposition and eliminate any conflict between our review of post-conviction claims and new sentencing claims.

*Commonwealth v. Spotz*, 84 A.2d 294, 311-12 (Pa. 2014). Failure to satisfy any one of these prongs is fatal to a claim of ineffective assistance. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011). The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015).

Appellant claims that appellate counsel was ineffective for not challenging the denial of his Rule 600 motion to dismiss. Appellant fails in his brief to develop this underlying claim in any meaningful way. While his brief states that it took more than 500 days from the date of the filing of the complaint until the commencement of his trial, it does not detail the delays in bringing the case to trial or the parties who caused such delays. Nor can we find any development of this claim in Appellant's filings in the PCRA court. Thus, this claim lacks arguable merit. *Commonwealth v. Maddrey*, 205 A.3d 323, 328–29 (Pa. Super. 2019) (rejecting appellant's Rule 600 claim on PCRA appeal because he failed to argue the set of facts that would warrant him relief).

Next, Appellant claimed that trial counsel was ineffective for not requesting a "mere presence" jury instruction. According to Appellant, on December 2, 2009, he was seen by witnesses exiting a driveway three houses from the victim's home and, therefore, the jury should have been advised that he was "merely present" near the scene.

An instruction that mere presence is insufficient to convict is not required in every case. **_Commonwealth v. La_**, 640 A.2d 1336, 1344 (Pa. Super. 1994) ("where a jury is fully and adequately instructed on the elements of a crime, and where it appears that a charge on 'mere presence' is not essential to their understanding of the case, the trial court may refuse to issue a specific instruction on mere presence."); **_Commonwealth v. Markle_**, 533 A.2d 756, 761 (Pa. Super. 1987) (counsel not ineffective for declining to request unnecessary mere presence instruction); **_Commonwealth v. Durah-El_**, 496 A.2d 1222, 1225 (Pa. Super. 1985) (counsel not ineffective for declining to seek mere presence instruction where jury was accurately informed of elements of crime and proposed defense).

The trial court accurately instructed the jury concerning the elements of the charged crimes, making clear that a conviction could only be based upon Appellant's illegal conduct, not his mere presence at the crime scene. For example, in instructing the jury on the crime of burglary, the court stated, "Pennsylvania law says that a defendant commits a crime of burglary when he **_enters a building_** in which he does not have permission or lawful authority to enter." N.T. 6/27/2012, at 28 (emphasis added). The trial court's instructions concerning Appellant's other charges stemming from the December 2, 2009 incident similarly required the jury to find that he actually entered the victim's residence, as follows:

> To find the defendant guilty of criminal trespass, you must find that the defendant **_broke into_** [the victim's home] in Philadelphia

which includes **_entry by force, breaking, intimidation, unauthorized opening of locks or through an opening designed for human access_**.

*Id.* at 31 (emphasis added).

> In order to find the defendant guilty of [criminal mischief], you must find that . . . defendant damaged the tangible property, in this case, the residence [of the victim] intentionally by causing flooding to her home.

*Id.* at 33.

> In order to find the defendant guilty of [violating a Protection From Abuse Order], you must find that . . . the defendant violated that [court order] **_by entering [the victim's home] in Philadelphia_**, or by any of the alleged acts **_inside that location_** after evaluating each of the dates I have given you.

*Id.* at 33-34 (emphasis added).

The trial court's instructions informed the jury of the elements of each crime with which he was charged. The instructions made clear that any conviction must be based on Appellant's illegal actions. He was not entitled to a separate instruction that mere presence was insufficient to find him guilty. Accordingly, this claim of ineffectiveness fails.

Next, Appellant claims that trial counsel was ineffective for not calling various alleged witnesses at trial: his mother Blanche Jones, his stepfather Frank Jones, Eric Bell, and his girlfriend Leticia Washington. To prevail on a claim that counsel was ineffective for failing to call a witness, Appellant must demonstrate that: (1) the witness existed, (2) the witness was available to testify on his behalf, (3) counsel knew or should have known about the witness, (4) the witness was willing to testify on his behalf, and (5) the

absence of the testimony prejudiced him. ***Commonwealth v. Wright***, 961 A.2d 119, 148, 155 (Pa. 2008). "Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness's testimony would have been beneficial or helpful in establishing the asserted defense." ***Commonwealth v. Chmiel***, 889 A.2d 501, 546 (Pa. 2005).

Appellant's argument fails with regard to Blanche Jones and Frank Jones because their testimony was introduced into the record via stipulation. With regard to Eric Bell, trial counsel stated during trial:

> [W]e did obtain service on Mr. Bell and I spoke to him personally on the telephone on Sunday, and it was my opinion at the time that Mr. Bell's testimony would not help [Appellant]. Indeed, my own opinion was it would hurt his case. So in lieu of that, I made a strategic decision not to ask Mr. Bell to testify in this case.

N.T. 6/26/2012, at 58–59. After hearing counsel's assertion, Appellant informed the court that he was satisfied with trial counsel's representation. N.T. 6/26/2012, at 63. Thus, he knowingly waived his right to call Bell as a witness. ***Commonwealth v. Lawson***, 762 A.2d 753, 756 (Pa. Super. 2000) (defendant who voluntarily waives right to call witnesses during colloquy cannot later claim that trial counsel was ineffective for not calling witness); ***Commonwealth v. Paddy***, 800 A.2d 294, 315 (Pa. 2002) (rejecting ineffectiveness claim for failure to call witnesses where defendant was colloquied and agreed with decision not to call witness).

- 14 -

Washington's affidavit vaguely asserted that "[t]he days in question, Mr. Prater was at my home with me, the only time he was not with me was when he went to see his Probation Officer a Mr. Ryan Corkery, which was every [T]uesday morning." Washington's affidavit did not address defendant's whereabouts on any of the specific dates at issue. In fact, Washington did not specify any date on which she and defendant were together. If taken literally, Washington's affidavit asserts that she was with defendant all day every day for months prior to his arrest.

Appellant fails to show that Washington's testimony would have altered the trial outcome. Her proffered testimony would have contradicted every witness at trial, including Appellant's own witnesses. Blanche Jones, Appellant's mother, averred in her own affidavit that she was "an eyewitness to one of the crimes [Appellant] allegedly committed at [her] home." Jones' stipulated testimony at trial contradicted Washington's claim that defendant was at home with her all day every day. **See Commonwealth v. Harvey**, 2020 WL 4883884, —A.3d— (Pa. Super. 2020) (non-precedential decision) (appellant's uncalled witness's proffered testimony would not have been beneficial because it would have contradicted appellant's other witness); **see also** Pa.R.A.P. 126(b) (permitting citation of non-precedential memorandum decisions filed after May 1, 2019 for persuasive value).

Washington's putative testimony also was refuted by the victim's coworker, who testified that she saw Appellant walk around the victim's car

on November 30, 2010, before he smashed the car windows. Appellant could not have been with Washington for all of that day. N.T. 6/26/2012, at 4–6. In addition, the victim's friend saw Appellant leaving the driveway behind the victim's home when she came by and saw the flooded house on December 2, 2009. *Id.* at 51–54. He was arrested that same day, and again on August 20, 2010, after planting a pipe bomb and again flooding her home. N.T. 6/25/2012, at 23, 45–46; N.T. 6/26/2012, at 51–52, 152–57. Thus, Appellant could not have been with Washington for all of that day as well.

In addition, Washington's alleged alibi failed to foreclose the possibility of Appellant's telephone call to the police on August 18, 2010, in which he claimed that the victim was going to kill herself with a pipe bomb. N.T. 6/25/2012, at 22, 46.

Since Washington's testimony would not have been beneficial to Appellant, the PCRA court properly denied relief on this issue.

Next, Appellant argues that trial counsel was ineffective for not seeking to suppress evidence of Appellant's cell phone number obtained by a detective without a warrant. This claim fails, because at the time of Appellant's trial and direct appeal, the law relating to warrantless searches of cell phones did not require suppression. The law on this subject did not change until after the

conclusion of Appellant's direct appeal. His trial attorney cannot be found ineffective for failing to anticipate this change.[3]

The record reflects that Detective Fredericksdorf arrested Appellant with a warrant and found a cell phone in Appellant's pocket. When the detective took Appellant to the police district, he called a supervisor in the police radio unit to find out the phone number of the call warning the police about the bomb in the victim's house. The detective called that number, and Appellant's cell phone rang. Without obtaining a second warrant to search the cell phone, the detective looked at the originating phone number displayed on Appellant's cell phone and recognized it as the number that he had just dialed. N.T. 06/26/2012, at 45–47.

A search occurs when police intrude upon a constitutionally protected area without the individual's explicit or implicit permission. *Florida v. Jardines*, 569 U.S. 1, 6 (2013). To constitute such an intrusion, the action need not uncover something "of great personal value"; even a small, seemingly insignificant act of information gathering by police in a constitutionally protected area is a search.

At the time of Appellant's trial in 2012 and direct appeal over the next two years, Pennsylvania law provided that when the police seized a cell phone

---

[3] Although the PCRA court did not deny relief for this reason, we may affirm its ruling for any reason supported by the record. *In Re A.J.R.-H.*, 188 A.3d 1157, 1175-76 (Pa. 2018).

found in plain view during the execution of a valid search warrant, the police were not required to obtain a second warrant before searching the cell phone's memory chip. *Commonwealth v. McEnany*, 667 A.2d 1143, 1149 (Pa. Super. 1995).

In 2014, the United States Supreme Court granted certiorari in *Riley v. California* and *United States v. Wurie*, 573 U.S. 373 (2014) ("*Riley*"), to resolve a split in lower courts as to "whether the police may, without a warrant, search digital information on a cell phone seized from an individual who has been arrested." *Id.* at 378. In its June 25, 2014 decision, the Supreme Court held in *Riley* that "in the absence of an applicable exception, **any search** of a cell phone requires a warrant. This is because, like one's home, an individual's expectation of privacy is in the cell phone itself, not in each and every piece of information stored therein." *Commonwealth v. Fulton*, 179 A.3d 475, 487 (Pa. 2018) (analyzing *Riley*).

On July 11, 2014, citing *Riley*, this Court held in *Commonwealth v. Stem*, 96 A.3d 407 (Pa. Super. 2014), that a warrantless search of the defendant's cell phone incident to his arrest for criminal trespass, a matter unrelated to his cell phone, violated the defendant's Fourth Amendment rights. More recently, in early 2018, again citing *Riley*, our Supreme Court held in *Fulton* that a detective violated the defendant's constitutional rights following his arrest when, without a warrant, he powered his cell phone on, navigated

its menus to find its assigned number, and monitored it for incoming calls and messages. *Fulton*, 179 A.3d at 488-89.

Had these decisions been in existence at the time of Appellant's prosecution, Appellant's attorney might have had reason to file a motion to suppress on the ground that Detective Fredericksdorf violated his constitutional rights by looking at the number displayed on Appellant's cell phone without a warrant. These decisions, however, were not in effect at the time of Appellant's trial. The first case in this chain, *Riley*, was not issued until June 25, 2014, one month after the conclusion of Appellant's direct appeal.[4] The law in effect at the time of trial, *McEnany*, did not support a motion to suppress. Because "counsel's stewardship must be judged under the existing law at the time of trial," *Commonwealth v. Colon*, 230 A.3d 368, 377 (Pa. Super. 2021), counsel "cannot be deemed ineffective for failing to predict future developments or changes in the law" such as *Riley*, *Stem* and *Fulton*.

Appellant also argues that that trial counsel was ineffective for not filing a motion *in limine* to exclude evidence of the fuses found near the bomb that he planted in the victim's home. This claim is without merit.

---

[4] On April 7, 2014, this Court affirmed Appellant's judgment of sentence. Appellant did not appeal to our Supreme Court, so his direct appeal concluded on May 7, 2014.

- 19 -

The police recovered two plastic bags containing rolls of green fuse from the victim's basement, one opened and one unopened. Appellant's fingerprint was found on the opened bag. The fuse in the opened bag was not the same as the one used in the bomb planted by Appellant in the victim's home. N.T. 06/22/2012, 69, 76–78.

The evidence of the fuses was relevant and admissible. The Commonwealth presented abundant evidence identifying Appellant as the person who left the bomb in a red and white cooler in the victim's basement. The call to 911 falsely informing authorities that the victim wanted to kill herself with a bomb originated from Appellant's cell phone. N.T. 06/25/2012, 22–23; N.T. 06/26/2012, 45–46. Before planting the bomb, Appellant twice tried to destroy the victim's home by flooding it. N.T. 06/25/2012, 15–16, 24–26; N.T. 06/26/2012, 51–52. In this context, the evidence that Appellant's fingerprint was on a bag containing incendiary fuses in the basement near the bomb was relevant to show that Appellant had access to bomb-building material, to prove his ongoing plan to destroy the victim's house, and to prove his identity as the person who planted the bomb in the victim's basement. *See Commonwealth v. Christine*, 125 A.3d 394, 402 (Pa. 2015) (shank belonging to defendant that was not used in actual crime was admissible because it showed his familiarity with and ability to create weapon used to murder victim); *Commonwealth v. Williams*, 640 A.2d

1251, 1260 (Pa. 1994) (evidence of guns not used in crime admissible to show that defendant had been at scene of the crime).

We now address Appellant's sentencing claim.

Appellant contends that the PCRA court abused its discretion by refusing to run his new sentence for risking a catastrophe concurrently with his other sentences. Appellant argued that his sentence of 10 to 20 years of imprisonment for risking a catastrophe was illegal because this offense is a third-degree felony carrying a maximum sentence of seven years' imprisonment. The court resentenced Appellant to 3½ to 7 years of imprisonment on this charge but kept Appellant's sentences on all other convictions the same and declined to run the sentence for risking a catastrophe concurrently with the other sentences. Appellant filed a motion challenging his new sentence that the court denied. We find no abuse of discretion.

Risking a catastrophe is a third-degree felony, 18 Pa.C.S.A. § 3302(b), carrying a maximum sentence of seven years' imprisonment. 18 Pa.C.S.A. § 1103(3). The PCRA court correctly held that Appellant's sentence of 10-20 years' imprisonment was illegal. Furthermore, the PCRA court had the authority to vacate his entire sentence and enter a new sentence on all counts. *Commonwealth v. Bartrug*, 732 A.2d 1287, 1289 (Pa. Super. 1999). This is because Appellant effectively challenged the entire sentencing plan by

contending that one of several interdependent sentences was illegal. *Id.* at 1290.

Appellant does not challenge (nor can he) the PCRA court's authority to enter a new sentence on all counts. He does claim, however, that the new aggregate of 29 to 58 years of imprisonment is unreasonable and instead, should be 25½ to 51 years, a total reached by making the sentence for risking a catastrophe concurrent with the other sentences. Appellant's claims implicate the discretionary aspects of sentencing. We note:

> [A]n appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> * * *
>
> What constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." A claim that a sentence is manifestly excessive might raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process.

- 22 -

*Commonwealth v. McLaine*, 150 A.3d 70, 76 (Pa. Super. 2016).

Here, Appellant filed a timely notice of appeal and raised these discretionary sentencing claims before the trial court in post-sentence motions. Additionally, his appellate brief properly includes the required Pa.R.A.P. 2119(f) statement. Appellant presents a substantial question for our review by asserting that the court failed to state sufficient reasons for imposing sentence outside the sentencing guidelines. *Commonwealth v. Beatty*, 227 A.3d 1277, 1287 (Pa. Super. 2020).

The Commonwealth incorporated into the record the notes of testimony from Appellant's initial sentencing hearing in 2012. N.T., 1/28/20, at 23. Appellant's prior record score was one, N.T., 11/2/12, at 1, and his highest offense gravity score, 10, yielded a guidelines sentence of 30 to 42 months. *Id.* at 13. The record demonstrates, however, that Appellant had no remorse for his acts and represented a grave threat to the victim and her children.

Moments before Appellant addressed the court, he smiled at the victim and the arresting officer and said, "I'll see you again in court." *Id.* at 26. When Appellant addressed the court, instead of expressing remorse, he assailed the arresting officer for allegedly "blatantly chang[ing] his statement many times." *Id.* at 28. He added, "For [the officer] to get on the stand and blatantly say I'm a threat to him is an insult to me because I'm a very humble person." *Id.* at 28-29. He then criticized the victim for "blatantly lying" to

obtain his conviction and labeled her testimony as an "insult" because he was a "very good father." *Id.* at 29.

The court responded, "[Y]ou're showing me now is you have no empathy. You have no caring or concern for the harm that you have caused this woman and your children by your actions . . . [Y]ou don't even feel the pain of someone you're supposed to love." *Id.* at 30-31. Appellant answered to the court, "You blatantly cut me off," *id.* at 31, and then denied hitting the victim or placing a bomb in her house. *Id.* at 32. The court replied:

> I have gone outside of the sentencing guidelines with regard to charges for a number of reasons. You just didn't know when to stop. You didn't know when to stop. You start out on contempt of court back in November of 2009. Then you just keep picking it up. You go in and flood her home. You harassed her, assaultive behavior, just make her life miserable.

*Id.* at 44. The court then asked, "You think it's funny?" Appellant answered, "Your Honor . . . I'm just sitting here listening to you." *Id.*

The court continued:

> And the problem is you don't get [it]. You still don't get it. You started out in terms of talking to you -- the only thing you were concerned about was you, you, you. You didn't have -- you didn't give a damn about how she felt, and the impact on your children, what she described to you in the letter, how your conduct and the discord in that home has affected your children; let alone, there being a pipe bomb in the home, which could have killed her and your children. And you don't get it. You just kept picking it up, picking it up, escalating it. And you say you love, I don't know what kind of love you practice. And you still don't get it, because you're sitting there frustrated and ready to jump out of your skin of what I'm trying to tell you at this point, but maybe with all this time ahead of you, maybe you'll get it at some point. But you need some therapy and some help. And counsel may be well-spoken in terms of his appeal to the Court that you may not be a

- 24 -

threat to others, but you are, because the pipe bomb could have hurt other people other than the persons you intended it to hurt. But you are most definitely a threat to this woman. I have no doubt that if you were out, you would continue your harassment. And not alone harassment, but you wouldn't be satisfied until you got her out of the picture and harmed her completely. Period. That's the threat. You can shake your head all you want to, but everything that you have done in this courtroom has demonstrated to this Court -- first of all, no remorse. You're narcissistic. And you have no concern for her well-being or the well-being of your children. You can shake your head and say all you want, but your actions speak louder than your words.

*Id.* at 44-46. Appellant responded, "All these allegations are false allegations . . . The jury didn't look completely at the evidence. They just looked at a woman cry on the stand. I'm not going to allow what a jury found me guilty of to change my character." *Id.* at 46-47. The court stated:

You have no character, because a man wouldn't sit up here and put this woman, who had your children, through the hell that you have put her through. And I would do everything I can to make sure that you don't harm her or put your children . . . Those are the reasons why I have gone out of the sentencing guidelines.

*Id.* at 47.

The record demonstrates ample justification for Appellant's lengthy sentence. His relentless and escalating pattern of terror against the victim, his egregious acts of repeatedly flooding her house and placing a pipe bomb in her basement, his threat in court to the arresting officer and victim, his arrogant denial of guilt, his insistence that he was an excellent father to the children whom he endangered, his refusal to express remorse, and his defiance towards the court illustrate his danger to the community in general and to the victim and her children in particular. Although his sentence was

substantial, it was a proper exercise of the court's discretion. ***See Commonwealth v. Booze***, 953 A.2d 1263, 1279-80 (Pa. Super. 2008) (trial court's reasons for sentence of 23 to 46 years for robbery, false imprisonment, burglary, theft, and criminal conspiracy to commit robbery and burglary were sufficient; defendant showed lack of remorse, he made threatening comments about others to probation officer contending that police set him up and that he would get them back after he was released, he had prison misconducts, facts of crimes showed that male in apartment was duct taped and bound with rope, all four robbers used guns, and defendant was ringleader of group, defendant committed further crimes after home invasion, and defendant was extremely dangerous individual and was danger to community).

In his final argument, Appellant states that we should not quash these appeals because the issues in all appeals are the same and because the lower court consolidated these cases for trial, sentence and PCRA proceedings. We have explained above that we have jurisdiction to address all issues raised in this appeal. We now have addressed all issues and find no reason to overturn the lower court's orders.

For these reasons, we affirm the order granting in part and denying in part Appellant's amended PCRA petition and affirm the order imposing Appellant's new judgment of sentence.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/9/2021