J-S09022-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMES R. FAIRCHILD :
:
Appellant : No. 2245 EDA 2025

Appeal from the PCRA Order Entered July 21, 2025
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001632-2021

BEFORE: MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.: **FILED APRIL 14, 2026**

James R. Fairchild ("Fairchild") appeals from the order denying his first, timely petition under the Post Conviction Relief Act[1] ("PCRA"). We affirm.

On direct appeal, this Court summarized the underlying facts and procedural history as follows:[2]

> On September 11, 2020, police responded to a burglary investigation at [an unoccupied] residence in Pocono Summit, Pennsylvania. The homeowner (hereinafter "the victim") reported that [around 10:00 a.m.,] he arrived at the home to find an unfamiliar gray Volkswagen in the driveway.[3] The victim told

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] For ease of discussion, we have amended the references, in the prior Superior Court memorandum, to "Appellant" to "Fairchild."

[3] The victim testified that his company owned the house, there was no one living there at the time, but the house "was set up for people to live there." N.T., 6/27/22, at 29-30.

police that a male walked toward him from the rear of the home, asked if the home was for [rent], and got into the Volkswagen and drove away.

The victim described the white male as over six feet tall, thin, and "scruffy looking." The victim also gave police the license plate number of the Volkswagen[,] which was registered to Fairchild. Subsequently, the police showed the victim a photograph of Fairchild and the victim confirmed it was the man he saw earlier.

[At the] property, the police found a broken basement window and the back door of the residence left open. The basement floor was wet and there were cut copper pipes overhead and sections of cut pipe stacked on the floor. Police also discovered hedge trimmers[, which did not belong to the victim,] and an unfamiliar boot print on the basement floor. [At trial, the investigating police detective testified that individuals "commonly" use hedge trimmers to "cut copper out of houses."[4]] A garage door left ajar revealed several pieces of broken copper tubing on the floor.

Police interviewed Fairchild and his wife, and both claimed that Fairchild was at their home that day working on their septic tank. The police took a sample of Fairchild's DNA and applied for a search warrant for Fairchild's home. After the search warrant was served upon Fairchild, the police received a telephone call from him. Fairchild realized the police recovered hedge trimmers from the victim's property and he explained that he had been missing his hedge trimmers for some time. Fairchild sounded nervous because the police took his DNA sample.[5] Fairchild further stated that the recovered hedge trimmers were probably his.

***Commonwealth v. Fairchild***, 309 A.3d 1098 (Pa. Super. 2023) (unpublished memorandum at 1-2) (paragraph breaks added).

---

[4] N.T., 6/27/22, at 50.

[5] The police "swab[bed] the area" and the hedge trimmers for DNA testing, but the results were "[i]nconclusive." N.T., 6/27/22, at 50-51.

The Commonwealth charged Fairchild with burglary and related offenses. The charges proceeded to a jury trial in June 2022. Privately retained counsel, Michael Ventrella, Esquire ("Trial Counsel") represented Fairchild. The victim described his encounter with Fairchild as summarized above.

Fairchild's defense was misidentification. Fairchild, his wife ("Wife"), and his mother ("Mother") all testified that at the time of the incident, Fairchild was at home, "working on the septic system" with his father ("Father"). *See* N.T., 6/27/22, at 138; *see also id*. at 103, 117. All three witnesses also testified that Fairchild was recovering from surgery, due to a chainsaw injury to his foot, and he wore a boot, was limping, and could not walk without a cane or assistance. *See id*. at 103, 117, 121-23. Fairchild described his foot that day:

> I made a special boot for that day, because my wound was still open and I was afraid of getting bacteria and that from the sewage in my wound, so I cut the top of a boot and I put my foot in the boot and I wrapped it all up with a roll of duct tape, all the way up to like my knee, so nothing could get inside the boot to, to, so I wouldn't have no infection or nothing[.]

*Id*. at 126. Wife explained that to work on the septic system by "get[ting] down on the ground and slid[ing] into" "a big hole in the ground" and using his arms to shovel. *Id*. at 110.

Relevant to Fairchild's arguments on appeal, we note that Father passed away one month before trial. Furthermore, Fairchild testified that on the

morning of the incident, he used the car to "run into town" to buy cigarettes, and returned home by 9:00 a.m. *Id*. at 124.

Wife testified that on the morning of the incident, shortly before 10:00 a.m., she lent their car to someone named Jon Skonieczny ("Skonieczny") for approximately two hours, in exchange for money. *See id*. at 106, 114. Wife did not initially tell Fairchild this, and she initially denied to the police loaning the car. *See id*. at 107. When asked why she later informed the police about this car loan, Wife replied: "[B]ecause, you know, you gotta tell the truth, it's not, it's not right, you know, and then by that time it was in, within a week, the cop didn't want to hear it [*sic*]." *Id*. at 108.

At this juncture, we summarize that on direct examination of the victim, the Commonwealth showed a photo of *Skonieczny*, and the victim stated it was the person he saw outside the house. *See id*. at 34. The victim, however, also identified Fairchild in court. On cross-examination, Trial Counsel elicited the victim's acknowledgment that he could have been "incorrect" about his identification of the person, whom he had only seen "for a few, 10, 15 seconds maybe." *Id*. at 38. Trial Counsel argued this misidentification in closing argument, as well as the lack of any description of limping by the victim. *See* N.T., 6/28/22, at 7-8.

Finally, we note that Pocono Mountain Regional Police Detective Donald Scarfo ("Detective Scarfo") testified to the following. He interviewed Skonieczny, who denied using Fairchild's car that day, and stated he had not

"seen or heard from [Wife] in some time." N.T., 6/27/22, at 70. Based on this interview, Skonieczny's height of approximately five feet and eight inches, as well as "information from" the United States Marshals Service, Detective Scarfo "rule[d] out" Skonieczny as a suspect. *Id*. at 69-70.

The jury found Fairchild guilty of burglary, criminal trespass, criminal mischief, and theft by unlawful taking. On October 18, 2022, the trial court imposed an aggregate sentence of five and one-half to fifteen years' imprisonment. Fairchild, then proceeding *pro se*, filed a direct appeal. This Court affirmed the judgment of sentence on November 30, 2023.

On January 16, 2024, Fairchild filed a *pro se*, timely PCRA petition.[6] He averred, *inter alia*, that Trial Counsel was ineffective for not presenting the "exculpatory testimony" of two additional witnesses, Kayla Stracka ("Stracka") and Donna Woodring ("Woodring"). PCRA Petition, 1/16/24, at unnumbered 2. Fairchild asserted: (1) they would have "supported [his] claim of being unable to walk unaided at the time of the crime;" and (2) Stracka, a school director, and Woodring, a retired nurse, "would [have] been held in

_____

[6] Fairchild did not file a petition for allowance of appeal with the Pennsylvania Supreme Court. Thus, for PCRA purposes, his judgment of sentence became final at the end of the thirty-day period to file such a petition, or Tuesday, January 2, 2024. *See* 42 Pa.C.S.A. § 9545(b)(3); *see also* 1 Pa.C.S.A. § 1908 (providing that when last day of any period of time referred to in any statute falls on Saturday, Sunday, or a holiday, such day shall be omitted from computation); Pa.R.A.P. 1113(a) (requiring a petition for allowance of appeal to be filed within thirty days of judgment). Fairchild then generally had one year, or until January 2, 2025, to file a PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1). As stated above, he filed a *pro se* petition on January 16, 2024.

high regard by the jury." *Id*. Fairchild further asserted that Trial Counsel was ineffective for not preserving the testimony of his late father, who would have stated he was with Fairchild at the time of the burglary.

On March 7, 2024, the PCRA court conducted an evidentiary hearing, at which Fairchild continued to proceed *pro se*. Stracka and Woodring both testified that they had observed Fairchild's foot injury, attended trial, and were willing to testify on Fairchild's behalf. Fairchild testified that he had requested Trial Counsel to present the above evidence, but he refused.

Trial Counsel testified as follows. The "whole defense" was misidentification. N.T., 3/7/24, at 37. At trial, "something really fortunate" arose: the victim identified "the wrong person" when the Commonwealth showed him a photo of Skonieczny. *Id*. Trial Counsel "intended to call [Fairchild], his wife, and his mother to present a consistent, streamlined defense. [Trial Counsel] felt that the additional witnesses were cumulative, duplicative, and would have taken away from the impact of the streamlined presentation." PCRA Court Opinion, 7/1/24, at 6.

Trial Counsel further testified:

[T]he witnesses who could have testified about [Fairchild's] purported injury would . . . have potentially opened the door for the Commonwealth to [play] a video showing [Fairchild] walking into stores on the day of the incident . . . without . . . crutches which, in turn, would have undermined [his] assertion that he was injured. [Fairchild's] position and strategy [were] to use his alleged injured status to show that he could not have stolen the piping and was not the person seen leaving the burglarized home as that person did not appear to be injured.

- 6 -

*Id*. at 6.

The PCRA court determined the record demonstrated that Trial Counsel "adequately prepared for trial and developed and presented reasonable defense strategies." *Id*. at 14. The court thus rejected Fairchild's claims of Trial Counsel's ineffective assistance and denied his PCRA petition.

Fairchild filed a timely *pro se* appeal with this Court. On December 19, 2024, a prior panel of this Court reversed the PCRA denial order, on the grounds that the PCRA court did not appoint counsel for the PCRA proceedings, nor conduct a colloquy for Fairchild's waiver of counsel. *See* Pa.R.Crim.P. 904(C) (providing that in PCRA proceedings, a "judge shall appoint counsel to represent" a *pro se* defendant who shows they are "unable to afford or otherwise procure counsel"). The panel thus remanded this matter to the PCRA court.

On remand, the PCRA court appointed Thomas Gerolimatos, Esquire. He did not file an amended PCRA petition. Instead, on July 21, 2025, the PCRA court held an evidentiary hearing, where Fairchild confirmed he would not raise any new issues, but would pursue the claims previously raised, now with the assistance of counsel. Trial Counsel again testified, providing testimony consistent with that at the first PCRA hearing.

The PCRA court again denied Fairchild's PCRA petition. Fairchild filed a timely notice of appeal. He and the PCRA court have complied with Pa.R.A.P. 1925(b).

Fairchild presents two issues for our review:

1. Whether the PCRA court erred in denying [Fairchild's] PCRA request for relief on the basis that [Trial Counsel] was ineffective in his assistance of counsel when he did not call as a witness at trial the private detective that [Fairchild] retained at the advice of [Trial Counsel,] Stracka, [and] Woodring to challenge the identification made on . . . Fairchild?

2. Whether the PCRA court erred in denying [Fairchild's] PCRA request for relief on the basis that [Trial Counsel] was ineffective in his assistance of counsel when he did not preserve the testimony of an alibi witness of [Father] who passed away before trial?

Fairchild's Brief at 4 (suggested answers omitted).

In his first issue, Fairchild avers the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not calling Stracka and Woodring as alibi witnesses at trial.[7] We consider the applicable standard of review: "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa. Super. 2021).

This Court has explained:

To prevail on a claim of ineffective assistance, the petitioner must plead and prove that the underl[y]ing claim is of arguable merit; that counsel had no reasonable strategic basis for the disputed action or inaction; and that there is a reasonable probability that

---

[7] In his statement of questions involved, Fairchild also refers to Trial Counsel's not calling a private detective at trial. **See** Fairchild's Brief at 4. However, his argument does not include any mention of a detective, let alone a developed argument with legal support. **See id**. at 18-32. We thus consider this issue abandoned. **See** Pa.R.A.P. 2119(a) (providing that the argument shall set forth "the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent").

- 8 -

the outcome of the proceeding would have been different but for counsel's error. Failure to satisfy any one of these prongs is fatal to a claim of ineffective assistance.

*Id*. (citations omitted).

This Court has further explained:

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019)

(citation omitted).

Additionally, we consider:

To prevail on a claim that counsel was ineffective for failing to call a witness, [the petitioner] must demonstrate that: (1) the witness existed, (2) the witness was available to testify on his behalf, (3) counsel knew or should have known about the witness, (4) the witness was willing to testify on his behalf, and (5) the absence of the testimony prejudiced him.

"Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness's testimony would have been beneficial or helpful in establishing the asserted defense."

*Prater*, 256 A.3d at 1284 (citations omitted and paragraph break added).

On appeal, Fairchild asserts that Stracka and Woodring were available and willing to testify at trial. Fairchild disputes the PCRA court's reasoning that Trial Counsel had reasonable bases for not calling them as alibi witnesses. Fairchild maintains: (1) Stracka's and Woodring's testimony would not have been "duplicative of any evidence already presented;" (2) "boring the jury with testimony" is simply not a reasonable basis for failure to call alibi witnesses," and this "was not a 30 day trial full of . . . complex legal documents [nor] an in depth and technical medical malpractice suit;" and (3) there was no potential to open the door to a video, as other defense witnesses "had already testified that [Fairchild] had difficulty walking that week." Fairchild's Brief at 20-22. Indeed, Fairchild maintains that such a video would have "corroborated his statement to police that" he went to the store that day. *Id*. at 22. Finally, Fairchild reasons that both Stracka and Woodring corroborated his alibi — that he was helping his father with "the septic work" — and they, being non-family members, would have "provided a significantly more credible basis for the jurors to credit." *Id*. at 20-21. Additionally, "Woodring, in particular, could have provided a much more credible source to assess [Fairchild's] health concerns as [she was] a longtime nurse." *Id*. at 25.

In denying relief on this claim, the PCRA court recounted Trial Counsel's testimony and concluded:

> [N]ot calling the additional witnesses identified by [Fairchild] was a reasonable strategic decision that was supported by the facts and events known at the time of, and as they unfolded during, the trial. The information that the additional witnesses could have

provided was presented during trial and properly argued. Reasonable strategic decisions to refrain from presenting cumulative and duplicative evidence and improper opinion testimony, to protect against potentially damaging impeachment, and to focus on misidentification by a Commonwealth witness do not constitute attorney ineffectiveness.

PCRA Court Opinion, 7/1/24, at 7. The PCRA court also credited Trial Counsel's testimony that calling the additional witnesses could have "opened the door for the Commonwealth to [play] a video showing [Fairchild] walking into stores on the day of the incident and moving without . . . crutches which, in turn, would have undermined [his] assertion that he was injured." *Id*. at 6.

After review, we conclude the record supports the PCRA court's findings. *See Prater*, 256 A.3d at 1282. At the second PCRA hearing, Trial Counsel reiterated that the defense theory was misidentification, and that the burglar was in fact Skonieczny, not Fairchild. The Commonwealth showed the victim a photo of Skonieczny, "expecting the [victim] to say no, [but] the [victim] said yes, it was that guy." N.T., 7/21/25, at 16. Trial Counsel explained: "[A]t that point I thought we had won, and I certainly hammered that to the jury in my closing argument." *Id*.

Additionally, at the first PCRA hearing, Trial Counsel had explained:

I didn't think that those other witnesses were going to really make a huge difference. I had something really fortunate, when the district attorney had the identifying witness identify the wrong person, and I thought that was going to be my major argument at the closing, which it was. And the other [witnesses] were just sort of going to say the same thing over and over again.

And one of the things about winning a trial is also not boring a jury, and I think that's important too, because if you just keep

doing things over and over again, you start seeing the jury, their eyes start glossing over and they start thinking, this is getting boring, let's get to the point. So sometimes you want to be quick, you want to get things done quickly.

N.T., 3/7/24, at 37-38.

Fairchild does not claim that Stracka or Woodring would have offered different testimony at trial. Instead, he claims these witnesses would have lent credibility, based on their professions as a school director and nurse, to the evidence already presented that his foot was injured. Trial Counsel's reasons for not calling them, however, were reasonable: (1) Fairchild, his wife, and his mother — those who lived with him — already testified about the protective wrapping on his foot and his inability to walk without a cane;[8] (2) he strategized to avoid presenting the same evidence repeatedly to the jury; and, in any event (3) the victim misidentified Skonieczny as the burglar.

Additionally, Fairchild ignores both Trial Counsel's and the PCRA court's reasoning that the Commonwealth's video would have shown he was not injured, as he claimed, and thus would have undermined his credibility. Given these circumstances, the record supports a finding that Trial Counsel's

_____

[8] Additionally, at the PCRA hearing, Trial Counsel testified in response to Fairchild's additional claim, that Trial Counsel was ineffective for not presenting medical records of his foot injury. Trial Counsel "testified that during trial preparation, he asked [Fairchild] for documentation and medical records . . . multiple times. However, he did not receive [them] until the day of trial" and did not have time to authenticate them or "work them into the defense." PCRA Court Opinion, 7/1/24, at 8. Fairchild did not dispute this testimony and does not acknowledge it on appeal.

decision, to not call two additional alibi witnesses, effectuated Fairchild's interests. *See Sandusky*, 203 A.3d at 1043. Fairchild has failed to establish counsel's ineffectiveness, and we determine no relief is due on his first issue.[9] *See Prater*, 256 A.3d at 1282.

In his second issue, Fairchild asserts the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not preserving his father's testimony before his death. Fairchild maintains that Father had provided Trial Counsel with a notarized statement "that he was willing to testify and . . . would provide an alibi," and that prior to trial, Trial Counsel "was quickly informed that [Father] was dying of cancer and would not survive until trial." Fairchild's Brief at 29. Fairchild further avers that Father "was in the best position to observe [him] the entire time of the alleged crime and

---

[9] We further note that on appeal, Fairchild briefly refers to Pa.R.Crim.P. 500, which, as he acknowledges, provides that a "*court* may order the taking and preserving of the testimony of any witness who may be unavailable for trial or for any other proceeding, or when due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved." Fairchild's Brief at 28-29 (*quoting* Pa.R.Crim.P. 500) (emphasis added). This rule focuses on a trial court's authority to direct the preservation of testimony, however, and not on counsel conduct.

Fairchild also makes a passing reference each to: (1) decisional authority that a court may "sometimes exclude[ weak] identifications when they presented too substantial a likelihood of misidentification;" and (2) a *Kloiber* instruction, which instructs a jury to receive a witness' equivocal identification with caution. Fairchild's Brief at 32 (*citing Commonwealth v. Fowler*, 352 A.2d 17 (Pa. 1976); *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954)). However, Fairchild presents no discussion linking these principles to his claims of Trial Counsel's ineffectiveness in this case, and thus we do not consider them. *See* Pa.R.A.P. 2119(a).

- 13 -

verify he did not leave," whereas Wife and Mother were inside the house, and the Commonwealth could have argued "there were opportunities for [Fairchild] to leave and commit the crime." *Id*. Finally, Fairchild contends he suffered "severe and clear" prejudice, where "the identification in this case was equivocal at trial," as the victim had "initially identified Skonieczy as the burglar." *Id*. at 30.

The PCRA court did not address this issue specifically. Nevertheless, we may apply its above reasoning, concerning Trial Counsel's reasonable strategic basis for not presenting additional witness testimony. At the second PCRA hearing, Trial Counsel testified why he did not interview Father:

> [O]ne of the things you want to do [in] a trial is not bore the jury[.] I think that's important, and if you just have too many witnesses saying the exact same thing, after a while the jury's eyes gloss over and go get on with it. I didn't think it would add anything and all of . . . Fairchild's witnesses obviously were going to be looked at as bias by the Commonwealth, you know, they have a reason to lie to protect him. So to me[,] not using a lot of them was going to be in my advantage, and actually I really didn't even want to put [Fairchild] on the stand, but I knew he would insist.

N.T., 7/21/25, at 10-11.

The PCRA credited Trial Counsel's same reasoning in rejecting Fairchild's claim that counsel should have called Stracka and Woodring as additional alibi witnesses. Additionally, Fairchild does not claim that Father would have provided unique testimony; instead, he contends Father would have provided the same alibi — that he and Fairchild were at home, working on the septic system at the time of the burglary. Fairchild has not established prejudice,

as he failed to show that preserving Father's testimony, and presenting it at trial, "offered a significantly greater potential chance of success." ***Sandusky***, 203 A.3d at 1043. Accordingly, no relief is due on Fairchild's second claim.

For the foregoing reasons, we affirm the order denying Fairchild's PCRA petition.

Order affirmed.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/14/2026