J-A12040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAMELL SCOTT HURDLE | : | |
| | : | |
| Appellant | : | No. 1627 EDA 2022 |

Appeal from the PCRA Order Entered May 31, 2022
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002509-2019

BEFORE: OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED MARCH 20, 2024**

Ramell Scott Hurdle appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Hurdle's counsel has filed a **Turner/Finley**[1] brief and a motion to withdraw as counsel, and Hurdle has filed a *pro se* response. We affirm the order denying Hurdle's PCRA petition and grant counsel's motion to withdraw.

Following a jury trial in June 2021, Hurdle was found guilty of two counts of trafficking in individuals, one count of criminal use of a communication facility, and five counts of promoting prostitution.[2] The jury found Hurdle not guilty of aggravated assault and simple assault.[3] He was sentenced to an

---

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

[2] 18 Pa.C.S.A. §§ 3011(a), 7512(a), and 5902(b), respectively.

[3] 18 Pa.C.S.A. §§ 2702(a)(1) and 2701(a), respectively.

aggregate term of 19 to 41 years of imprisonment. Broken down, he was sentenced to five to 10 years' imprisonment on each of the two counts of trafficking in individuals; two to five years' imprisonment on the criminal use of a communication facility; two to five years' imprisonment on two of the promoting prostitution counts; and one to two years' imprisonment on the remaining three counts of promoting prostitution. All the sentences were ordered to run consecutively to each other.

In July 2021, Hurdle filed a PCRA petition. Counsel was appointed and filed an amended PCRA petition. The amended petition alleged that counsel was ineffective for failing to properly prepare Hurdle to testify at trial. *See* Amended Petition for Post-Conviction Relief, filed 12/30/21, at ¶ 10.

At an evidentiary hearing, Hurdle's trial counsel testified that he has been a criminal defense attorney for 30 years and has tried over 100 jury trials. N.T., 5/10/22, at 33-34. Counsel testified that he met with Hurdle approximately 30 times in preparation for trial. *Id.* at 40-41, 50. He stated that Hurdle conceded to him that he was guilty of promoting prostitution, but he denied that he was guilty of human trafficking, aggravated assault, and simple assault. *Id.* at 37-38. Counsel's strategy was therefore to have Hurdle truthfully testify and take "ownership over some of the activity that was indefensible" and then contest the remaining charges. *Id.* at 38-39. He stressed to Hurdle to be truthful while testifying. *Id.* at 44-45. Counsel explained to Hurdle the ramifications of admitting guilt to some charges "but we wanted to try to beat the most serious [charges]." *Id.* at 48-49. Counsel

testified that Hurdle agreed with this strategy. *Id*. at 38. Counsel noted that his strategy prevailed because the jury acquitted Hurdle of aggravated assault – the most serious charge – and simple assault. *Id.* at 46-47. He believed that Hurdle testified well and that his testimony was solely the reason he was found not guilty of those charges. *Id.* at 47-48.

Counsel further testified that it was in Hurdle's best intertest to testify because he believed that the victim was a good witness for the Commonwealth, Hurdle was articulate and intelligent, and, in his experience, juries want to hear from the defendant in criminal cases. *Id.* at 43-44. Counsel testified that he went over Hurdle's testimony numerous times, including any possible questions that he might be asked. *Id.* at 45-56. He did a "practice direct and cross" examination with Hurdle over a series of 10 meetings. *Id.* at 49. Counsel also confirmed that when the trial court colloquied Hurdle whether it was his decision to testify, Hurdle replied, "Yes." *Id.* at 47.

Hurdle testified that he met with counsel approximately eight times between March 2021 and his trial in June 2021. *Id.* at 10. Hurdle stated that he told counsel he did not want to testify at trial, but that counsel "was egging [him] on to take the stand." *Id.* at 13, 15. Hurdle stated that counsel did not do a practice direct or cross examination with him or any other preparation in anticipation of him testifying prior to trial. *Id.* at 13-15, 17. Hurdle maintained that he was unprepared to testify. *Id.* at 23. He also testified that counsel did not explain that admitting guilt to certain changes took away the Commonwealth's burden of proof to prove those charges. *Id.* at 17-18.

- 3 -

On cross-examination, Hurdle conceded that "[i]t was my choice to testify." *Id.* at 25. He also said that when the trial court colloquied him about whether he had enough time to talk to his attorney about his right to testify, he lied and said, "Yes." *Id.* at 24. Hurdle further acknowledged that he was acquitted of the charges of aggravated assault and simple assault. *Id.* at 26.

After the hearing, on May 31, 2022, the court denied Hurdle's petition. This appeal followed.

Counsel's *Turner/Finley* brief identifies one potential issue: whether the PCRA court erred in failing to find trial counsel was ineffective for not properly preparing Hurdle to testify at trial. *See Turner/Finley* Br. at 3 (unpaginated). Hurdle's *pro se* response to counsel's *Turner/Finley* brief raises several claims of ineffectiveness of PCRA counsel. *See Pro Se* Response to Appellate Counsel's *Turney/Finley* Brief and to Withdraw as Counsel ("*Pro Se* Response"), filed 1/23/24, at 10-31.

Before addressing the merits, we first must determine whether counsel has satisfied the procedural requirements of a motion to withdraw. A *Turner/Finley* brief must detail the nature and extent of counsel's review, list each issue the petitioner wishes to have reviewed, and provide an explanation of why the petitioner's issues are meritless. *Commonwealth v. Widgins*, 29 A.3d 816, 818 (Pa.Super. 2011). Counsel also must contemporaneously send to the petitioner a copy of the "no-merit" letter/brief, a copy of counsel's motion to withdraw, and a statement advising the petitioner of the right to proceed *pro se* or with new counsel. *Id.* If counsel

satisfies the technical requirements, this Court must conduct its own review of the merits of the case. **Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa.Super. 2007). If we agree with counsel that the claims are without merit, we will allow counsel to withdraw and deny relief. **Id.**

Here, counsel has substantially complied with the requirements of **Turner/Finley**. Counsel detailed his review of the record and concluded that Hurdle's claim is meritless. He also provided the **Turner/Finley** brief to Hurdle and advised him of his right to retain new counsel or proceed *pro se*. Counsel additionally provided Hurdle with a copy of the motion to withdraw. Thus, we proceed to the issue counsel has identified.

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Presley**, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." **Commonwealth v. Johnson**, 966 A.2d 523, 539 (Pa. 2009).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on [the petitioner]." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of

ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). Prejudice in this context means that, "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." ***Commonwealth v. Velazquez***, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1106 (Pa. 2012).

In addressing Hurdle's claim, the PCRA court made the following findings of fact:

> [Trial counsel] regularly met with [Hurdle] to discuss the evidence and their defense strategy of the case, as well as to prepare for trial. Indeed, [trial counsel] met with [Hurdle] more than thirty (30) times over the course of approximately one (1) year. As the discovery was reviewed and [Hurdle's] admission of involvement developed, [trial counsel's] evaluation of the case evolved throughout this time frame. In particular, initially [Hurdle] indicated that he merely provided transportation to the victim to the motel and was not involved in promoting prostitution. However, in light of the evidence produced during discovery, such as email exchanges in which [Hurdle] agreed to bring condoms to the victim's motel room and delineated the charges for services that would be performed, it became clear to [trial counsel] that [Hurdle] had to take ownership over the indefensible charges of promoting prostitution. While willing to admit his criminal conduct in promoting prostitution, [Hurdle] denied being involved in human trafficking or aggravated assault. Consequently, [trial counsel's] strategy was to have [Hurdle] tell the truth and concede promoting prostitution, while vehemently challenging the charges of

human trafficking and aggravating assault. [Hurdle] agreed with this strategy.

Believing that [Hurdle] possessed charisma and was articulate and intelligent, [trial counsel] conveyed to [Hurdle] that he thought, in his professional opinion, that [Hurdle] should take the stand in his defense to counter the testimony of the victim. Indeed, the victim made a very good witness at trial, and [trial counsel] believed that it was necessary to present testimony to counter her version of events in order to allow him to make an argument to the jury. Based on [trial counsel's] years of experience, he found that a jury desires to hear from the accused. Thus, [trial counsel] related to [Hurdle] that he believed that it was in [Hurdle's] best interest to testify. [Hurdle] wholeheartedly agreed with [trial counsel's] suggestion and advice. Moreover, this [c]ourt colloquied [Hurdle] prior to his testifying at trial to assure that it was his decision, and his decision alone, to testify. This [c]ourt also queried [Hurdle] to confirm that he had sufficient time to speak with his attorney about whether or not he would testify and that he was comfortable with his decision. [Hurdle] affirmed that he wanted to testify.

Prior to testifying, [trial counsel] and [Hurdle] reviewed his testimony on numerous occasions. Over the course of approximately ten (10) meetings, [trial counsel] discussed the testimony that [Hurdle] should provide and the questions that would be posed to him on direct examination. In addition to reviewing direct testimony, cross-examination was practiced and discussed. [Trial counsel] counseled [Hurdle] and impressed upon him that it was important to tell the truth because it was within the jury's province to disregard all of his testimony if they would find that he lied in one aspect of his testimony. Consequently, during his testimony, as was done by [trial counsel] during opening argument, [Hurdle] conceded to promoting prostitution, but vehemently denied that he hurt the victim or committed human trafficking. [Trial counsel] believed, in his professional opinion, that [Hurdle] presented himself well to the jury. In fact, [trial counsel] indicated that the effectiveness of the [Hurdle's] testimony at trial could be gleaned from the verdict. Indeed, [Hurdle] was found not guilty of [a]ggravated and [s]imple [a]ssault.

PCRA Court Opinion, filed 5/31/22, at 3-5 (footnotes omitted).

We agree this claim lacks merit. As the PCRA court noted, the evidence reflects that counsel met with Hurdle on over 30 occasions prior to trial and discussed their trial strategy together. Counsel also practiced direct and cross-examination with Hurdle and advised Hurdle to testify truthfully. The PCRA court found trial counsel's testimony credible and evidently credited his testimony over Hurdle's testimony. **See id.** at 8. The evidence supports the conclusion that trial counsel adequately prepared Hurdle to testify at trial. Accordingly, this ineffectiveness claim fails.

We next consider the issues raised in Hurdle's *Pro Se* Response to counsel's **Turney/Finley** brief and motion to withdraw. Hurdle raises three claims that PCRA counsel was ineffective. First, Hurdle asserts that PCRA counsel was ineffective for failing to argue that trial counsel was ineffective when he did not adequately object to the Commonwealth's use of hearsay testimony at Hurdle's preliminary hearing to establish a *prima facie* case in violation of the Pennsylvania Supreme Court's decision in **Commonwealth v. McClelland**, 233 A.3d 717 (Pa. 2020) (holding hearsay evidence alone is insufficient to establish a *prima facie* case at a preliminary hearing). *Pro Se* Response at 10-12.

Hurdle maintains that at the preliminary hearing, the alleged victim did not appear; thus, he argues that the court improperly determined that a *prima facie* case had been established based on hearsay alone. **Id.** at 15. He notes that while trial counsel filed an omnibus pretrial motion raising this issue, that

motion was denied. *Id.* at 16. Hurdle asserts that PCRA counsel should have argued that trial counsel was ineffective for failing to sufficiently present a competent and legal basis for the filing of the motion. *Id.* at 16, 18.

"The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish that a crime was committed and a probability that the defendant was connected therewith." *Commonwealth v. Sanchez*, 82 A.3d 943, 984 (Pa. 2013). "Its purpose is not to prove [a] defendant's guilt." *Commonwealth v. Tyler*, 587 A.2d 326, 328 (Pa.Super. 1991) (emphasis removed). "[O]nce a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial." *Sanchez*, 82 A.3d at 984.

Here, after the preliminary hearing, Hurdle's case proceeded to trial, and the jury found him guilty of promoting prostitution, trafficking in individuals, and criminal use of a communication facility. Any defect in the preliminary hearing was rendered immaterial by the guilty verdicts. *See id.* Accordingly, trial counsel's alleged failure to file an adequate *habeas corpus* petition challenging the Commonwealth's reliance on hearsay at the preliminary hearing was immaterial, and trial counsel cannot be deemed ineffective for failing to raise this claim. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1210 (Pa. 2006) (stating "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim"). Hurdle cannot establish PCRA counsel was ineffective for failing to pursue this issue. *See Commonwealth v.*

*Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011) (concluding that "if the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of appellate counsel ineffectiveness of necessity must fail"). Consequently, Hurdle is not entitled to relief on this issue.

Hurdle next maintains that PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to object to the amendments to Hurdle's criminal information. *Pro Se* Response at 19. He emphasizes that he was initially charged with the sole offense of promoting prostitution. However, after the matter was bound for trial, the Commonwealth filed an amended information with seven additional charges, including trafficking in individuals and criminal use of a communication facility. *Id.* at 19-20. Hurdle argues that counsel was ineffective for failing to object to these amendments, which were "highly prejudicial[.]" *Id.* at 21.

"The purpose of an [i]nformation or an [i]ndictment is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act." *Commonwealth v. Alston*, 651 A.2d 1092, 1095 (Pa. 1994). An information "is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events." *Id.*

Pennsylvania Rule of Criminal Procedure 564 governs the amendment of an information and provides:

The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

When considering a Rule 564 amendment,

the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

***Commonwealth v. Beck***, 78 A.3d 656, 660 (Pa.Super. 2013) (citation omitted). The Commonwealth may amend the information, even on the day of trial, so long as it does not prejudice the defendant. ***Commonwealth v. Sinclair***, 897 A.2d 1218, 1224 (Pa.Super. 2006). In determining whether a defendant would suffer prejudice, the following factors are taken into consideration:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

- 11 -

*Commonwealth v. Mentzer*, 18 A.3d 1200, 1203 (Pa.Super. 2011) (citation omitted).

Here, Hurdle has failed to demonstrate that the amendments prejudiced him. The amended information was filed three months after his arrest and almost two years before his trial. The crime indicated in the original criminal complaint involved the same basic elements and arose out of the same factual situation as the crimes added by the amendments, namely Hurdle's involvement in the prostitution of the victim. Thus, Hurdle was put on notice of his criminal conduct, and he was not prejudiced by the amendments. Accordingly, PCRA counsel was not ineffective in failing to pursue this claim.

Lastly, Hurdle argues that PCRA counsel was ineffective for failing to allege that trial counsel was ineffective when he failed to argue that Hurdle's convictions merged for sentencing purposes. *Pro Se* Response at 25. Hurdle maintains that merger was warranted because all eight counts stemmed from a single act. *Id.* at 29. He contends that the charges of criminal use of a communication facility and promoting prostitution were lesser included offenses and his sentence on those charges should have merged with the greater offense of trafficking in individuals. *Id.* at 30.

The Sentencing Code governs merger for sentencing purposes and provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes

> merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. Therefore, crimes do not merge for sentencing purposes unless: "1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009). "To determine whether offenses are greater and lesser-included offenses, we compare the elements of the offenses." *Commonwealth v. Watson*, 228 A.3d 928, 941 (Pa.Super. 2020) (citation omitted). "If both crimes require proof of at least one element that the other does not, then the sentences do not merge." *Id.* (citation omitted).

Here, Hurdle was found guilty of trafficking in individuals, promoting prostitution, and criminal use of a communication facility. These three crimes are not crimes in which all the statutory elements of an offense are included in the statutory elements of another offense. *Compare* 18 Pa.C.S.A. § 3011(a)(1) and (2), *with* 18 Pa.C.S.A. § 5902(b)(1), (3), (4), (6), and (8), *and* 18 Pa.C.S.A. § 7512(a). Merger was therefore not proper, and Hurdle is not entitled to relief on this claim.

Motion to withdraw as counsel granted. Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/20/2024