J-A12022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARIA I. SANUTTI-SPENCER | : | |
| | : | |
| Appellant | : | No. 1046 MDA 2023 |

Appeal from the PCRA Order Entered June 29, 2023
In the Court of Common Pleas of Columbia County
Criminal Division at No(s): CP-19-CR-0000754-2014

BEFORE:   PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED: OCTOBER 16, 2024**

Appellant, Maria I. Sanutti-Spencer, appeals from the order entered in the Columbia County Court of Common Pleas, which denied her first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court has previously set forth the relevant facts and some of the procedural history of this case as follows:

> Appellant married Frank Spencer ("the Victim") in February 1997.  Between 2006 and 2012, the Victim reported approximately twenty-five (25) to thirty-five (35) domestic incidents to the Hemlock Township police department. Police records confirm that the Victim reported that Appellant had threatened to kill him on "numerous occasions."  Following one such occasion, which occurred in October 2006, the Victim filed for divorce.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

On May 15, 2007, the Victim reported that Appellant threatened that her Father, Anthony Rocco Franklin ("her Father"), would kill him. Contemporaneous with this report, other testimony established that Appellant sought help from a former coworker, Lee Mix, to secure an early parole for her Father[, as Mix worked for the parole board at that time]. When Mix and Appellant were coworkers in 2005, Appellant threatened to harm the Victim. … Appellant also implied that her Father was in the Mafia. Mix informed Appellant that she could not help.

In March 2009, her Father submitted a home plan to the parole board, in which he proposed to live at a residence jointly owned by Appellant and the Victim ("Fairview Drive Residence"). Parole agent James Curry conducted the pre-parole investigation. When Curry investigated the proposed home plan, the Victim told Curry that he did not want her Father living at the Fairview Drive Residence because Appellant and the Victim were getting a divorce. Her Father's proposed home plan was denied.

In September 2009, her Father's home plan was resubmitted, proposing again to live at the jointly owned residence. Appellant indicated to the parole board investigator that she was divorced and the homeowner. Her Father's home plan was approved. However, at the time, the divorce was not final; Appellant and the Victim were subject to an interim divorce order, giving each party the right to live at the Fairview Drive Residence when it was their turn to have custody of the kids.

Between January 2010 and September 2011, police responded to and/or investigated approximately sixteen incidents specifically involving the Victim and Appellant at the Fairview Drive Residence. Appellant threatened to burn down the Victim's new house and threatened to burn down the house of the Victim's girlfriend, Julie Dent. … In January 2010, a fire occurred at the Victim's home. In August 2010, another fire burned the house of the Victim's girlfriend to the ground.

The evidence presented at trial suggested that the Victim lived in absolute fear of Appellant and her Father. The Victim was very worried that her Father was capable of

killing him and that they were threatening to kill him. The Victim "was absolutely in fear to the point where he was changing his habits so he wouldn't be going to the bank on the same day." Appellant expressed anger and hostility toward the Victim following divorce hearings, often concerning custody of their children. According to one witness, "on numerous occasions, [Appellant] would fly in the driveway and get out and there would be a screaming match that would ensue."

On June 8, 2012, a divorce decree was issued dissolving the marriage and designating the Victim as homeowner of the Fairview Drive Residence. A police officer helped the Victim compose a no-trespassing letter to Appellant (dated 6/27/2012), telling Appellant to stay off his property except when exchanging custody of their children in the driveway.

On June 30, 2012, news of the divorce appeared in the local paper. On the evening of June 30, 2012, Appellant called the Victim's cousin and warned him that if the Victim's mother moved into the Fairview Drive Residence, Appellant would burn it to the ground; Appellant threatened that "that house will be her last.... And she can join [the Victim]." The Victim's cousin immediately reported Appellant's threats to the police.

On July 3, 2012, the Victim's body was discovered shot dead in the foyer of the Fairview Drive Residence. The evidence established that the Victim was shot from a distance as he was entering the house and that no one heard from the Victim between July 1-2, 2012. The Victim was killed by two rapidly fatal gunshot wounds: one to the head and one to the left arm. The parties stipulated that the bullet recovered from the Victim's torso was from a .30 caliber class discharged rifle and the bullet recovered from his head/neck was fired from a .38, .357 caliber, or nine-millimeter class handgun. Blood splatter was found on the interior of the front-door threshold, "indicative of the door being opened when the bloodletting event occurred." Officer Sergeant Brian J. Dropinski found two shell casings near a tree with a Y shape in front of the house. Officer Dropinski testified that the tree offered support for the firing position and was within firing range of the front door. …

Corporal David Andreuzzi found yellow, cleaning gloves at the scene, one on the kitchen floor and one in the kitchen sink. A forensic expert testified that DNA samples recovered from the gloves matched the DNA profile of Appellant.

On July 23, 2014, a grand jury issued an indictment, finding probable cause to believe that Appellant and her Father engaged in a series of crimes, culminating in the Victim's murder. On July 28, 2014, Appellant was arrested and charged with [criminal homicide and related offenses]. On October 30, 2014, Appellant filed a motion for writ of *habeas corpus*. Following a hearing, Appellant's motion was denied. Appellant also filed an omnibus pre-trial motion, including a motion to preclude hearsay testimony. Following a hearing, the omnibus motion was denied, except the motion to preclude hearsay testimony was denied without prejudice to Appellant's ability to file motions *in limine* six weeks before jury selection.

In September 2015, the Commonwealth filed a motion to preclude irrelevant evidence related to Appellant's health as well as the Victim's alleged drug abuse and violent propensities. Upon consideration of Appellant's response and following a hearing, the court issued a pre-trial order precluding Appellant from introducing evidence of the Victim's alleged drug abuse and violent propensities. In addition, the court denied Appellant's motions *in limine*.

Following a two-week jury trial, the jury returned a guilty verdict against Appellant … on November 20, 2015[, for numerous crimes including criminal homicide, criminal solicitation to commit homicide, conspiracy, and related offenses]. On December 18, 2015, Appellant was sentenced [to life imprisonment plus an aggregate term of 250 to 696 months' imprisonment]. …

*Commonwealth v. Sanutti-Spencer*, No. 782 MDA 2016, unpublished memorandum at 2-7 (Pa.Super. filed Jan. 11, 2018) (internal citations and footnotes omitted), *cert. denied*, ___ U.S. ___, 139 S.Ct. 654, 202 L.Ed.2d 502 (2018). This Court affirmed Appellant's judgment of sentence on January

11, 2018, the Pennsylvania Supreme Court denied allowance of appeal on June 26, 2018, and the United States Supreme Court denied Appellant's petition for writ of *certiorari* on December 10, 2018. ***See id.***

On May 20, 2019, Appellant timely filed a *pro se* PCRA petition. The court subsequently appointed PCRA counsel, who filed an amended PCRA petition on Appellant's behalf. The court conducted PCRA hearings on September 27, 2021, September 28, 2021, and October 20, 2021. By order dated June 28, 2023, and filed the next day, the court denied PCRA relief. Appellant timely filed a notice of appeal on July 26, 2023. On July 31, 2023, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), which Appellant filed on August 21, 2023.

Appellant raises four issues for our review:

> Was trial counsel ineffective for (1) failing to call Anthony Sanutti at trial and (2) did trial counsel render ineffective assistance for not calling Timothy Wilhelm as an expert in the Spencer home arson, and not requesting a ***Frye***[2] hearing to determine whether Detective Dennis Woodring's methodology was generally accepted in the field of fire investigations, specifically the concept of expectation bias?
>
> Was trial counsel ineffective for not pursuing a timely recitation of the "no adverse inference" jury instruction and was appellate counsel ineffective for not pursuing a claim based upon the untimely "no adverse inference" jury instruction from the court?

---

[2] ***Frye v. United States***, 293 F. 1013 (D.C.Cir. 1923). ***See also Commonwealth v. Chmiel***, 662 Pa. 672, 240 A.3d 564 (2020) (explaining that Pennsylvania adheres to ***Frye*** screening test, which bars novel scientific evidence from courtroom until underlying methodology has achieved general acceptance in relevant scientific community).

Was trial counsel ineffective for his lack of preparation for the pretrial motions, most notably, the admission of [Victim's] statements under the state of mind exception and present sense impression by not citing any applicable case law to supplement his filings and to rebut the filings by the Commonwealth?

Was trial counsel ineffective for not objecting to the admission of [Victim's] state of mind [and allowing] certain testimony into the record that provided the majority of the indicia of guilt, including testimony from Paul Siciliano, Leo Yodock, Corey Robert Fish, James Curry, Sergeant Scott Traugh, Daniel May, George Hettler, Ron Romig, and Derk Reed?

(Appellant's Brief at 2-3).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Parker***, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021). Further, where the PCRA court makes credibility determinations, we are bound by them if they are supported by the record. ***Commonwealth v. Mojica***, 242 A.3d 949 (Pa.Super. 2020), *appeal denied*, 666 Pa. 290, 252 A.3d 595 (2021).

"Counsel is presumed to have rendered effective assistance."

***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).

After a thorough review of the record, the briefs of the parties, and the applicable law, we conclude that Appellant's issues merit no relief for the reasons stated in the PCRA court's well-reasoned opinion. (***See*** PCRA Court Opinion, filed 6/29/23, at unnumbered pp. 11-21) (finding: **(issue 1)** Anthony Sanutti, Jr. ("Anthony") is Appellant's brother; following Victim's murder, Anthony allegedly had conversation with his father, Mr. Franklin, wherein Mr. Franklin admitted murdering Victim; Mr. Franklin also did not indicate that Appellant was involved; at PCRA hearing, trial counsel adamantly denied being told about Anthony's conversation with Mr. Franklin; PCRA court found trial counsel credible; PCRA court further did not believe that Anthony would not have gone to police or to Appellant if Mr. Franklin had stated that

Appellant was not involved in murder;[3] as trial counsel was not informed of Mr. Franklin's alleged confession, counsel was not ineffective for failing to call Anthony as witness;[4] regarding Appellant's claim that trial counsel was ineffective for failing to call Mr. Wilhelm, police charged Appellant with arson of Victim's home; in preparation for her trial, Appellant solicited inspection by Mr. Wilhelm; Mr. Wilhelm opined that law enforcement's conclusion that fire was arson was flawed; however, Appellant's son told trial counsel that Appellant had admitted her involvement in arson; thus, trial counsel had ethical concerns about calling Mr. Wilhelm to establish falsehood; nevertheless, trial counsel used other evidence to discredit law enforcement's report regarding arson by relying on other opinions that had determined fire was of undetermined origin;[5] trial counsel had reasonable strategic basis for

_____

[3] Although Anthony initially testified at the PCRA hearing that his father said Appellant was not involved in Victim's murder, on cross-examination, Anthony admitted that his father did not expressly state that Appellant was not involved; rather, his father simply did not mention any involvement by Appellant when he confessed that he had killed Victim, and Anthony inferred from the conversation that Appellant was not involved. (*See* N.T. PCRA Hearing, 9/27/21, at 85-87).

[4] *See Commonwealth v. Small*, 602 Pa. 425, 980 A.2d 549 (2009) (explaining that to establish ineffectiveness for failure to call witness, appellant must prove witness existed and was available to testify for defense, counsel knew or should have known witness existed, witness was willing to cooperate, and proffered testimony's absence denied appellant fair trial).

[5] Further, trial counsel stated that he did not request a *Frye* hearing concerning the Commonwealth's expert, Mr. Woodring, because counsel did not find a legal basis on which to challenge that opinion. Trial counsel was
*(Footnote Continued Next Page)*

- 8 -

actions and was not ineffective; **(issue 2)** trial counsel requested "no adverse inference" jury instruction and court initially believed it had given such charge; court subsequently realized it had omitted charge, and it provided supplemental "no adverse inference" charge;[6] jurors deliberated for another hour after supplemental charge; there was ample time for supplemental charge to sink into minds of jurors; trial counsel took appropriate actions to have charge published to jurors; further, Appellant did not suffer prejudice; thus, trial counsel was not ineffective;[7] **(issues 3-4)** trial counsel was not ineffective for failing to cite to case law during motion *in limine* proceedings to preclude testimony concerning Victim's state of mind;[8] prior to 2021 (post-

_____

aware that the expert he had retained for the defense, Mr. Wilhelm, refuted Mr. Woodring's claims, but counsel had concerns regarding Mr. Wilhelm's report where Mr. Wilhelm cited to a manual that was not in effect at the relevant time. (*See* N.T. PCRA Hearing, 9/28/23, at 18-19).

[6] *See* Pa.R.Crim.P. 647(D) (explaining that after jury has retired to consider its verdict, additional or correctional instructions may be given by trial judge in presence of all parties).

[7] Likewise, Appellant has failed to demonstrate how appellate counsel was ineffective for failing to raise this issue on direct appeal where the court ultimately provided the "no adverse inference" instruction in a supplemental jury instruction. Appellant cites no law to support the proposition that the court's supplemental jury charge was insufficient. Instead, Appellant relies on cases where the court failed to provide the requested "no adverse inference" instruction **at all**.

[8] Appellant cites no law that states counsel is required to provide specific case citations in a pre-trial motion *in limine* or at a hearing on same. Additionally, we note that, notwithstanding Appellant's reference to the "present sense impression" hearsay exception in his statement of questions presented, *(Footnote Continued Next Page)*

dating Appellant's 2015 trial), there was confusion in this area of law until Supreme Court issued its decision in *Commonwealth v. Fitzpatrick*, 667 Pa. 447, 255 A.3d 452 (2021); trial counsel objected during motion *in limine* arguments to admission of testimony concerning Victim's state of mind, but court ruled against him; additionally, there was abundant, admissible testimony concerning Appellant's statements in which Appellant acknowledged threatening Victim; Appellant was not prejudiced by admission of hearsay statements regarding Victim's state of mind given overall evidence presented; thus, trial counsel was not ineffective[9])  Accordingly, we affirm on the basis of the PCRA court's opinion.

_____

Appellant's argument focuses only on how the challenged statements were inadmissible under the state of mind hearsay exception.  As Appellant does not develop any argument concerning an analysis of the present sense impression hearsay exception, we will not discuss that exception.  Further, to the extent Appellant purports to challenge trial counsel's lack of preparation in ways unrelated to the pre-trial motion *in limine*, those claims are not fairly suggested by Appellant's statement of questions presented.  *See* Pa.R.A.P. 2116(a) (stating no question will be considered unless it is stated in statement of questions involved or is fairly suggested thereby).

[9] As discussed at length in the court's opinion, Appellant relies on *Fitzpatrick, supra* to support her claim that the challenged statements were inadmissible. Assuming without deciding that the challenged statements were inadmissible hearsay, we agree with the PCRA court that counsel was not ineffective for failing to predict changes in the law.  *See Commonwealth v. Spotz*, 587 Pa. 1, 896 A.2d 1191 (2006) (explaining that counsel's stewardship must be judged under existing law at time of trial and counsel cannot be deemed ineffective for failing to predict future developments or changes in law).  As the Commonwealth points out, and as discussed in *Fitzpatrick*, there were cases that would have supported admission of testimony concerning Victim's

*(Footnote Continued Next Page)*

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/16/2024</u>

_____

state of mind at the time of Appellant's trial, just as there were cases that would have supported exclusion of such evidence.

Further, we acknowledge this Court's decision in **Commonwealth v. Brown-Camp**, No. 2328 EDA 2021 (Pa.Super. filed Oct. 31, 2022) (unpublished memorandum); **see also** Pa.R.A.P. 126(b) (explaining that we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value). In **Brown-Camp**, on appeal from the denial of the appellant's PCRA petition, this Court addressed the appellant's claim that trial counsel was ineffective for failing to object to allegedly inadmissible testimony wherein the decedent had identified the appellant as his killer. This Court discussed **Fitzpatrick**, which was issued at the time of the PCRA proceedings in **Brown-Camp**, and concluded that the PCRA court's conclusion that the appellant was not prejudiced was based on a legally erroneous analysis of **Fitzpatrick** as applied to the facts of the appellant's case. As the PCRA court did not conduct a hearing, this Court remanded for a PCRA hearing to afford trial counsel an opportunity to be heard as to whether he had a reasonable basis for failing to object on hearsay grounds. Upon remand, this Court directed the PCRA court to determine whether the basis counsel offers for failing to object is reasonable and whether the erroneously-admitted evidence likely affected the verdict. **See Brown-Camp, supra**. Here, unlike in **Brown-Camp**, trial counsel sought to preclude the challenged statements in a motion *in limine*; ultimately, trial counsel was unsuccessful in this attempt. Additionally, the court held multiple PCRA hearings in this case, after which the court ruled that Appellant failed to satisfy the second and third prongs of the ineffectiveness test. Thus, **Brown-Camp** is distinguishable from the facts of this case.

- 11 -