J-S06005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOUGLAS LOCKETT | : | |
| | : | |
| Appellant | : | No. 336 WDA 2024 |

Appeal from the Order Entered February 21, 2024
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000680-2017

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:           **FILED: February 14, 2025**

Douglas Lockett appeals pro se from the order denying his first, timely petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546. Lockett asserts PCRA counsel was ineffective by failing to raise a number of claims with the PCRA court. After careful review, we affirm.

Lockett was charged for the shooting death of seventeen-year-old D.M. ("Victim") on September 17, 2016. The following facts were adduced at trial. Victim came into possession of approximately a half kilogram of crack cocaine two days prior to her death.[1] Victim wanted to sell the narcotics and enlisted her brother's help. Victim's brother contacted his high school classmate,

---

[1] Apparently unbeknownst to Victim, the drugs were fake. Police testified the drugs observed at the scene appeared to be crack cocaine, but upon subsequent testing, no illegal substances were found.

Steven Cansler, to assist in finding a buyer. Cansler contacted Lockett, who expressed an interest in buying the narcotics. Cansler acted as middleman and conducted the majority of communication with Lockett prior to the scheduled narcotics transaction.

On September 17, 2016, Victim told Cansler to have Lockett meet her near her house in the Homewood section of the City of Pittsburgh. Ultimately, Cansler gave Lockett the contact information for Victim's brother. Victim's brother had a FaceTime call with Lockett just prior to the shooting. During this FaceTime call, Victim's brother told Lockett where to meet for the narcotics transaction. Victim proceeded to the location where Lockett was told to meet her. Within minutes, Victim's brother heard shots and ran out of his house to find his sister on the ground. He informed their mother, and both went to render aid to Victim. Victim's brother called 911.

When police arrived, they observed Victim on the ground with a single gunshot wound to her chest. Emergency medical personnel pronounced Victim dead at the scene. Next to the Victim was a firearm. Police further located multiple shell casings around the scene, later determined to be fired from three different firearms. An expert firearms examiner determined three of the 9-millimeter casings found at the scene were all fired from the firearm found next to the victim's body. Victim's brother testified the firearm was Victim's.

Police interviewed Victim's brother, who explained the proposed narcotics transaction and identified Cansler. Victim's brother also allowed

police to download the contents of his cell phone, which corroborated his communication with Cansler and Lockett.

Police interviewed Cansler on September 20, 2016, and September 22, 2016. The first interview was audio recorded; the second interview was audio and visually recorded. During the first interview on September 20, 2016, Cansler told police about his conversations with Victim's brother and scheduling the deal with someone from Butler, who he identified as "Don Don." Cansler further gave police his phone and allowed them to download its contents.

During the second interview, on September 22, 2016, Cansler explained that "Dougie" was also part of the deal. Cansler said Don Don and Dougie were going to each pay half the money for the narcotics. However, Don Don didn't have his half of the money, so they agreed to rob Victim of the narcotics. Afterwards, Dougie told Cansler that Victim pulled a gun out, resulting in Don Don shooting her.

At trial, Cansler told the jury he lied to police. Cansler testified he helped set up the narcotics transaction between Lockett and Victim, but there was no plan to rob Victim. He explained it was just a drug deal gone bad. He also claimed Don Don does not exist. The Commonwealth extensively examined Cansler regarding his prior statements to police. The Commonwealth further called the detective who interviewed Cansler and played both recorded interviews for the jury. Transcriptions of the interviews were further admitted

into evidence during trial. The detective explained Cansler was consistent in his statements, which were remarkably different than his trial testimony.

The jury found Lockett guilty of second-degree murder, robbery, criminal use of a communication facility, and conspiracy to commit robbery.[2] Lockett was sentenced to life imprisonment for the murder conviction, and a consecutive 5-10 years' incarceration for conspiracy. Lockett filed a timely appeal, and this Court affirmed his judgment of sentence on September 13, 2019. **See Commonwealth v. Lockett**, 1194 WDA 2018 (Pa. Super. filed September 13, 2019) (unpublished memorandum). Lockett petitioned the Pennsylvania Supreme Court for allowance of appeal, which was denied on March 3, 2020. **See Commonwealth v. Lockett**, 226 A.3d 561, 357 WAL 2019 (Pa. 2020).

Lockett filed the instant pro se PCRA petition on March 1, 2021. Appointed counsel filed a **Turner**/**Finley**[3] no merit letter and request to withdraw as counsel. The PCRA court granted counsel's request to withdraw and issued a Rule 907 notice of intent to dismiss on January 25, 2024. **See** Pa.R.Crim.P. 907. Lockett did not respond, and the PCRA court denied his PCRA petition on February 22, 2024. Lockett filed a timely notice of appeal to this Court. The PCRA court did not order Lockett to file a Rule 1925(b)

---

[2] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 7512(a), and 903, respectively.

[3] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

statement. *See* Pa.R.A.P. 1925(b). In lieu of a Rule 1925(a) opinion, the PCRA court referred this Court to its Rule 907 notice of intent to dismiss for the reasons it denied Lockett's PCRA petition.

Lockett raises two issues for our review:

1. Whether PCRA [c]ounsel was ineffective for failing to investigate and raise meritorious claims for relief, which was not designed to effectuate [Lockett's] interests and has [had] an adverse effect o[n] the proceedings?

2. Whether the PCRA [c]ourt's [o]rder denying relief is supported by the record and is free of legal error?

Appellant's Brief, at 4 (lower court's answers omitted).

Although Lockett purports to raise only two claims, he presents eight sub issues in his argument section regarding his claim of PCRA counsel's ineffectiveness. These eight issues are as follows:

[A.] Trial counsel was ineffective for failing to impeach Detective Fabus and/or object to the prosecutor for eliciting false testimony[.]

[B.] Trial counsel was ineffective for failing to investigate, and cross-examine, the medical examiner regarding the victim's ability to fire shots after being shot in the chest[.]

[C.] Trial counsel was ineffective for failing to object to an erroneous jury instruction on "accomplice testimony[.]"

[D.] Trial counsel was ineffective for failing to object to the trial court's answer to the jury's third question, that was legally and factually erroneous[.]

[E.] Trial counsel was ineffective for failing to request a curative, or cautionary, instruction regarding the implication of prior bad acts[.]

[F.] Appellate counsel was ineffective for failing to raise the claim of trial court error regarding a prejudicial conflict of interest[.]

[G.] PCRA [c]ounsel was ineffective for failing to investigate whether the Commonwealth withheld impeachment evidence with respect to Cansler[.]

[H.] PCRA [c]ounsel was ineffective for failing to raise the claim that Lockett's sentence is unconstitutional[.]

Appellant's Brief, at 16, 19, 21-22, 24, 27, 30, 31, 32-33.

Before we turn to the substance of Lockett's issues, we must first determine if any are preserved for our review. Lockett alleges this is his first opportunity to raise PCRA counsel's ineffectiveness and, pursuant to **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), this Court may review the claims even though they were not presented to the PCRA court.

In **Bradley**, our Supreme Court held "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting pro se, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Id.** at 401 (italics and footnote omitted). This is Lockett's first opportunity to raise PCRA counsel's ineffectiveness, therefore, we will address Lockett's claims.

As all of Lockett's issues assert counsel was ineffective, we begin with the burden placed on Lockett:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the

- 6 -

following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations and quotation marks omitted).

Each prong has been defined as follows:

[A] claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 1043-44 (citations omitted). "[F]ailure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Id.* at 1044 (citation omitted).

Lockett requests this Court remand for an evidentiary hearing on his claims of PCRA counsel's ineffectiveness. *See* Application for Remand, 5/8/24 (unpaginated); Appellant's Brief, at 34. However, the *Bradley* Court recognized that:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, an appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere "boilerplate assertions of PCRA counsel's ineffectiveness," however, where there are "material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded[.]"

*Bradley*, 261 A.3d at 402 (brackets and citations omitted).

Accordingly, "*Bradley* did not guarantee a PCRA petitioner substantive review of claims of PCRA counsel's ineffectiveness, nor did it create an absolute right to remand for development of those claims." *Commonwealth v. Lawrence*, 309 A.3d 152, 155 (Pa. Super. 2024). As such, "to demonstrate the propriety of a remand [appellant must], either in the petition for remand or in [a]ppellant's brief, explain[] to this Court how further development of the factual record would satisfy all three prongs of this test as to each of prior PCRA counsel's alleged failings." *Id.* at 155-56. Simply put, the claims must be presented to this Court "as if they were being pled in the PCRA petition itself." *Id.* at 156.

Furthermore, as these are layered claims of ineffectiveness of counsel, "the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Commonwealth v. Burkett*, 5 A.3d

1260, 1270 (Pa. Super. 2010). We will now address each of Lockett's claims of PCRA counsel's ineffectiveness to see if he has satisfied this standard for remand.

First, Lockett argues PCRA counsel was ineffective as he did not assert trial counsel was ineffective for failing to impeach Detective Fabus regarding Detective Fabus' assertion Cansler was consistent in his prior statements to police. **See** Appellant's Brief, at 16. Alternatively, Lockett claims PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness as trial counsel did not object to Detective Fabus' testimony as false testimony. **See id.**

The Commonwealth asserts this claim does not have arguable merit, as it is based upon a misunderstanding of Detective Fabus' testimony. **See** Appellee's Brief, at 17-18. The Commonwealth further emphasizes that both recorded statements were played for the jury, and they were then able to make their own determination as to whether Cansler's prior statements were consistent. **See id.** at 18-19.

Notably, trial counsel did impeach Detective Fabus regarding the two interviews and whether they were consistent:

Q. When you interviewed [Cansler] on September 20th, you would agree with me that was the first interview?

A. Yes, sir.

Q. And in that interview he never at any point said that he was a participant in a robbery of any kind?

A. That's correct, he didn't physically rob anybody.

Q. He also never implicated Douglas Lockett or this Don Don as participants in a robbery during that first interview?

A. I have to look back at it[,] but I don't recall if it was the first or second one.

\*\*\*

Q. I'm showing you [the September 20, 2016 interview].

\*\*\*

A. Yes, sir, I believe it was the second interview.

Q. So in that first interview he never says anything to you about a robbery?

A. No, not that I [saw].

\*\*\*

Q. And in the second interview now all of a sudden he is saying he was a participant or, at least, implicating Douglas Lockett in this robbery?

A. Yes, sir. He stated Lockett and Don Don [committed] the robbery, yes.

**See** N.T. Trial, 4/17/18, at 503-05.

Not only was the jury able to listen to both recorded interviews and make its own determination regarding whether Cansler was consistent, but trial counsel pointed out, and clarified, that Cansler provided two different stories to police in those two interviews. Lockett's first claim therefore does not have arguable merit, nor can he show prejudice as the jury had all the information it needed to determine for itself if Cansler was consistent in his

prior statements. ***See Burkett***, 5 A.3d at 1270 (subsequent counsel is not ineffective for failure to raise a meritless claim).

Next, Lockett asserts PCRA counsel was ineffective for failing to claim trial counsel was ineffective because he did not investigate nor cross-examine the medical examiner regarding Victim's ability to fire shots after she was shot. ***See*** Appellant's Brief, at 19. Lockett claims the medical examiner would have said Victim would be unable to shoot her firearm after being shot in the chest, as the bullet hit her heart and lung. ***See id.*** at 20. Lockett believes this would have bolstered trial counsel's argument to the jury that he acted in either self-defense or imperfect self-defense thereby convicting him of a lesser charge. ***See id.*** at 19-20.

The Commonwealth argues this request is a "fishing expedition" and because Lockett has not presented any evidence to support his theory, or assert he has the evidence to present if we were to grant remand, he is not entitled to an evidentiary hearing. Appellee's Brief, at 21. We agree.

As noted above, it is Lockett's duty "to demonstrate the propriety of a remand" by explaining "how further development of the factual record would satisfy all three prongs [of the ineffectiveness test.]" ***Lawrence***, 309 A.3d at 155-56. To prove arguable merit:

> based upon trial counsel's failure to call an expert witness, the petitioner must prove that an expert witness was willing and able to testify on the subject of the testimony at trial, counsel knew or should have known about the witness and the defendant was prejudiced by the absence of this testimony.

***Commonwealth v. Williams***, 141 A.3d 440, 460 (Pa. 2016) (citations omitted).

Lockett does not assert he has an expert willing to testify Victim could not have fired after being shot herself. Nor does he claim to have an affidavit from the medical examiner (or other expert) indicating such. Therefore, Lockett has not demonstrated the propriety of remand.

We further find Lockett would be unable to establish prejudice. The testimony at trial established Victim had a firearm. Three of the shell casings located in the area were fired from Victim's firearm. Lockett had sufficient evidence to argue to the jury Victim shot first. Furthermore, the trial court agreed with Lockett that he was entitled to a jury instruction on self-defense. ***See*** N.T. Trial, 4/17/18, at 547 (after discussion of what instructions to give, court rules it will provide self-defense instruction), 648-656 (justification instructions). Therefore, Lockett would be unable to show this alleged testimony would have likely changed the outcome of his trial.

Next, Lockett argues PCRA counsel is ineffective for failing to assert trial counsel's ineffectiveness as he did not object to the jury instruction on accomplice testimony. ***See*** Appellant's Brief, at 21-22. Lockett raises two alternative claims regarding the instructions. First, Lockett asserts the jury was incorrectly instructed that they were able to choose whether Cansler was an accomplice. Second, Lockett points out a misstatement in the trial court's instruction: "You must decide whether Steven Cansler was an accomplice in

the crime charged. If after considering all the evidence you find that he wasn't an accomplice, you must apply the special rules to his testimony otherwise you can ignore these." N.T. Trial, 4/17/18, at 625. The trial should have said either "If after considering all the evidence you find that he was[] an accomplice, you must apply the special rules[;]" or "If after considering all the evidence you find that he wasn't an accomplice, you must [not] apply the special rules[.]"

The Commonwealth admits the trial court misspoke in the instruction above but argues this claim does not have arguable merit nor can Lockett show he was prejudiced. *See* Appellee's Brief, at 22-23. The Commonwealth notes that jury instructions must be read as a whole and the trial court correctly advised the jury, as a whole, on the law that must be applied to determine if Cansler was an accomplice and what rules to apply to his testimony. *See id.* at 22-23.

The Commonwealth is correct that:

> When reviewing a challenge to a part of a jury instruction, the Court must review the jury charge as a whole to determine if it is fair and complete. A trial court has broad discretion in phrasing its charge and can choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Jones*, 668 A.2d 491, 517 (Pa. 1995) (citations omitted).

Further, "[a] charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount

to fundamental error." ***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted).

In reviewing Lockett's first allegation that the jury should not have been permitted to decide if Cansler were an accomplice, because "there was no dispute as to whether Cansler was an accomplice[,]" we note that Cansler did not testify to being an accomplice to Lockett's plan to rob the victim. Appellant's Brief, at 22; N.T. Trial, 4/16/18, at 420, 423-424. During trial, Cansler told the jury "It was just a [drug] deal that went wrong." N.T. Trial, 4/16/18, at 424. Cansler claimed he lied to police and made-up the story about Lockett robbing Victim. ***See id.*** at 441, 442, 443. Cansler stated he "didn't know it was going to be a robbery." ***Id.*** at 444. Based upon Cansler's testimony, there was sufficient evidence presented to the jury for them to decide if Cansler was Lockett's accomplice in the robbery and murder of Victim. ***See Commonwealth v. Banks***, 285 A.2d 506, 509 (Pa. 1971) (trial court did not err in allowing jury to determine whether witness was an accomplice instead of declaring it as a matter of law, since the instruction, taken as a whole, clearly instructed the jury of the care and scrutiny to be used when considering the witness' testimony). Trial counsel was not ineffective for failing to object to this instruction.

Turning to Lockett's second complaint regarding the instructions, we must review the entirety of the jury instructions to determine if it "clearly,

adequately and accurately" describes the law to be applied. *Jones*, 668 A.2d at 517. The entirety of the accomplice instructions are as follows:

> You go about appraising the credibility of witnesses by taking into consideration all of the conditions that surround the appearance of a witness on a witness stand, the witness' demeanor, the witness' responsiveness or evasiveness as the case may be, the witness' knowledge or lack of knowledge of the subject matter at hand, the witness' opportunity for observation and from memory, the witness' interest, if any, in the outcome of the case, and any other circumstance and detail which ordinary experience dictates are the usual and common indicia of truthfulness or lack of truthfulness.
>
> I will define for you certain applications of law in terms of evaluating the credibility applied to an accomplice and this is with possibility the testimony of one Steven Cansler. A person is an accomplice of another person in the commission of a crime if he has the intent of promoting or facilitating the commission of the crime and, one, solicits the other person to commit it; or two, aids or agrees or attempts to aid the other person in planning or committing the crime. Simply put, an accomplice is a person who knowingly and voluntarily cooperates or aids another person in committing an offense.
>
> When a person is an accomplice, his testimony has to be judged by special precautionary rules. Experience shows that an accomplice may often try to place the blame falsely on someone else. On the other hand, the accomplice may give perfectly truthful testimony as a witness. Special rules that I will give you are meant to help you distinguish between truthful and false accomplice testimony.
>
> You must decide whether Steven Cansler was an accomplice in the crime charged. If after considering all the evidence you find he wasn't an accomplice, you must apply the special rules to his testimony otherwise you can ignore these.
>
> There are special rules that apply to accomplice testimony. First, you should view the testimony of an accomplice with disfavor because it comes from a corrupted source. Second, you should examine the testimony of an accomplice closely and accept it only with care and caution. Third, you should consider whether

the testimony of an accomplice is supported in whole or in part by other evidence. Accomplice testimony is more dependable if supported by independent evidence. However, even if there is no independent or supportive evidence, you may still find the defendant guilty solely on the basis of an accomplice's testimony if after using the special rules that I just told you about you are satisfied beyond a reasonable doubt that the accomplice testified truthfully and that the defendant is guilty.

N.T. Trial, 4/17/18, at 623-626.

A thorough review of the entirety of the jury instructions leaves no doubt that the jury was properly, clearly, and adequately advised as to how they may consider accomplice testimony. We find no error in the jury instructions as a whole. Therefore, trial counsel had no basis to object, and PCRA counsel cannot be ineffective for failing to claim trial counsel was ineffective. Therefore, this claim has no merit.

Lockett's fourth allegation of PCRA counsel's ineffectiveness involves failing to raise trial counsel's ineffectiveness for not objecting to the court's answer to the jury's third question. *See* Appellant's Brief, at 24. Lockett "asserts the [c]ourt, and the attorneys, were severely overthinking the question and, thereby, missed the mark when it came to answering it." *Id.* at 25.

The Commonwealth responds this claim does not have arguable merit, as the trial court asked the jurors for clarification on their question, received clarification, and answered their question. *See* Appellee's Brief, at 25. Finally, the Commonwealth points out the trial court told the jury to speak up if it did

not answer their question and no jurors indicated they had any further questions after the court provided its answer. ***See id.*** We agree.

The question Lockett complains the trial court answered incorrectly is as follows: "confirm that if an element refers to the defendant it implies (sic) to Lockett only versus if an element refers to accomplice or a conspirator, e.g. voluntary manslaughter paragraph five -- or section five -- second versus paragraph five, third." N.T. Trial, 4/18/18, at 674. The trial court then explained to the attorneys he was "really perplexed" by that question and asked them to clarify. ***Id.*** As part of the clarification, the jury highlighted portions of the written charge and provided that to the court. The court then shared those highlighted portions with the attorneys. The highlighted instructions were not read into the record, nor are they included in the certified record in this appeal.

Prior to answering the jury's questions, the court told the jury: "I'm going to do my best to answer these questions. If I don't address what you're asking, so to speak, you just let me know and I'll try again." ***Id.*** at 687. At the end of answering the questions, the court told the jury "So look closely at again the definitions that were given to you. If you have any further questions, I will try to address them, okay. Anything else[?]" ***Id.*** at 694. The jury did not ask any further questions until the next day when they sent a note regarding their division in deliberations. No questions were asked of the court.

Lockett's claim that the court answered the question incorrectly is pure speculation. There is no reason to believe the jury was not adequately advised by the court based upon the clarification the jury provided to the court in the form of highlighted written instructions. Notably, the jury was instructed they could continue to ask questions, but they did not. After reviewing what actually happened at trial, we find no merit to Lockett's fourth allegation of ineffectiveness.

Next, Lockett asserts PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for not requesting a curative or cautionary instruction regarding prior bad act evidence. **See** Appellant's Brief, at 27. Lockett points to multiple pages in the trial transcript that he claims reference prior bad acts. **See id.** at 28 (citing to trial transcript pages 373, 409, 412-456, 32-35, 500-501, and 511). According to Lockett, "[e]ach of these references would have the impact of giving the jury the impression that Lockett was involved in other criminal activity." **Id.**

The Commonwealth initially asserts it did not introduce any prior bad act evidence. **See** Appellee's Brief, at 26-27. The Commonwealth explains Lockett's reference to pages 32-35 of the transcript are regarding a pretrial motion in limine where the Commonwealth sought to introduce evidence recovered from a white iPhone located at the scene of the murder to connect it to Lockett. **See id.** at 27. The Commonwealth never introduced this

evidence, however, as Lockett's counsel stipulated the white iPhone was Lockett's phone that he dropped at the scene. ***See id.***

Our review of the record confirms this fact. Pages 32-35 of the transcript are pretrial argument regarding the Commonwealth's motion. This argument was conducted outside the presence of the jury. Lockett has not pointed to any pages in the trial transcript, nor could we find any, where this evidence was introduced.

Lockett's argument on this claim is woefully undeveloped. Many of the cited pages Lockett's refers to do not reference any prior bad acts. ***See*** N.T. Trial, 4/16-17/18, at 373 (a detective explains to the court his prior experience working in narcotics), 409 (end of brother's testimony, beginning of discussion of immunity order regarding Cansler that took place outside the presence of the jury), 412-456 (the entirety of Cansler's testimony), 500-501 (discussion outside the presence of the jury followed by a stipulation presented to the jury that the phone recovered near Lockett when he was arrested was owned by Lockett and then discussion of the contents of that phone, specifically the attempted sale of a firearm the Commonwealth argued was used by Lockett during the commission of the crimes), and 511 (a passing reference to Lockett's address being in other police reports). We will not act as counsel and scour the record to find support for Lockett's arguments. ***See Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en*

*banc*) (finding issue waived for failure to develop the argument). Therefore, this claim is waived.

Next, Lockett argues PCRA counsel was ineffective for failing to raise the claim that appellate counsel was ineffective for not asserting the trial court erred in its decision regarding a conflict of interest at Lockett's preliminary hearing. **See** Appellant's Brief, at 30. Lockett submits his attorney at the preliminary hearing had a conflict of interest, as a partner in his law firm represented Cansler at Cansler's preliminary hearing. **See id.**

Lockett, again, provides no support for his underlying claim of appellate counsel error. He provides less than a page of argument, with one citation to authority without any discussion of what proposition he believes the authority stands for nor any discussion of how it applies to his case. Again, we will not act as counsel for Lockett. This claim is waived for failure to develop it.

Even if not waived, this claim does not merit relief. "Once [a defendant] has gone to trial and been found guilty of the crime, any defect in the preliminary hearing is rendered immaterial[.]" **Commonwealth v. Tyler**, 587 A.2d 326, 328 (Pa. Super. 1991) (citations omitted). As Lockett proceeded to trial with different counsel, any potential defect in his preliminary hearing because of the alleged conflict of interest is meritless. As such, this claim does not entitle Lockett to relief.

Next, Lockett argues PCRA counsel was ineffective for failing to investigate whether the Commonwealth offered a plea deal to Cansler for his

testimony against Lockett. ***See*** Appellant's Brief, at 31-32. As he explains, "Lockett believes that Cansler pled guilty before trial and was sentenced to 15 to 30 years afterwards." ***Id.*** at 32.

Lockett has provided no evidence of any deal with Cansler. He asserts PCRA counsel should have looked into whether there was a deal. ***See id.*** Lockett's speculation that a deal was brokered is insufficient to establish his entitlement to an evidentiary hearing. ***See Lawrence***, 309 A.3d at 155-56 (appellant's burden to show further development of factual record necessary).

Furthermore, this issue was addressed at trial. The testimony of Cansler at trial established that he had not yet pled guilty to any crime and was merely hoping for a deal. ***See*** N.T. Trial, 4/16/18, at 412, 413, 456 (noting he is hoping for a plea deal, he is currently charged with criminal homicide, robbery, and conspiracy and facing life in prison). As this evidence shows, Cansler had not yet pled guilty and was still hoping for a plea deal at the time of Lockett's trial. "The law merely requires defense counsel to conduct reasonable investigations or reach rational decisions that make particular investigations unnecessary." ***Commonwealth v. Cox***, 983 A.2d 666, 692 (Pa. 2009) (citation omitted). It is unreasonable to assert PCRA counsel must ignore Cansler's trial testimony and investigate whether he pled guilty prior to Lockett's trial. The rational decision here was simply to read the trial transcript. PCRA counsel indicated he reviewed the trial transcript, and we find

that sufficient under the facts of this case. *See Turner/Finley* Letter, 4/24/23, at 1.

Finally, a review of the publicly available docket sheet shows Cansler pled guilty and was sentenced the same day — on June 13, 2019, over a year after he testified against Lockett. *See* Docket Sheet, CP-02-CR-0013840-2016, at 7; *Solomon v. U.S. Healthcare System of PA, Inc.*, 797 A.2d 346, 352 (Pa. Super. 2002) (acknowledging a court make take judicial notice of public docket sheets); Pa.R.E. 201(b)(2) (permitting courts to take judicial notice of facts deriving from sources whose accuracy cannot reasonably be questioned). Therefore, this claim has no merit.

In Lockett's final claim of PCRA counsel's ineffectiveness, he asserts PCRA counsel was ineffective for failing to assert Lockett's sentence of life without parole is unconstitutional. *See* Appellant's Brief, at 32-33. Lockett again raises no argument other than one citation to authority. This time, however, Lockett cites the order of our Supreme Court granting allowance of appeal as to two related issues:

> (1) Is Petitioner's mandatory sentence of life imprisonment with no possibility of parole unconstitutional under Article I, § 13 of the Constitution of Pennsylvania where he was convicted of second-degree murder in which he did not kill or intend to kill and therefore had categorically-diminished culpability, and where Article I, § 13 should provide better protections in those circumstances than the Eighth Amendment to the U.S. Constitution?
>
> (2) Is Petitioner's mandatory sentence of life imprisonment with no possibility of parole unconstitutional under the Eighth Amendment to the U.S. Constitution where he was convicted of

second-degree murder in which he did not kill or intend to kill and therefore had categorically-diminished culpability under the Eighth Amendment?

***Commonwealth v. Lee***, 313 A.3d 452, 180 WAL 2023 (Pa. 2024) (brackets omitted).

Our Supreme Court has not yet decided ***Lee***, and one can only speculate what they may decide. "[C]ounsel cannot be deemed ineffective for failing to predict future developments or changes in the law." ***Commonwealth v. Prater***, 256 A.3d 1274, 1286 (Pa. Super. 2021) (quotation marks and citations omitted). PCRA counsel cannot be deemed ineffective for failing to speculate what the Court may decide in ***Lee***. As such, Lockett's final claim of PCRA counsel's ineffectiveness fails.

Finally, Lockett asserts the PCRA court's order denying his PCRA petition was not supported by the record and is not free of legal error. ***See*** Appellant's Brief, at 33. The only argument Lockett presents herein is a request for remand regarding his claims of PCRA counsel's ineffectiveness. ***See id.*** at 33-34.

In a separate motion with this Court, Lockett also requested remand so he may develop a record as to PCRA counsel's ineffectiveness. ***See*** Application for Remand, 5/8/24 (unpaginated).

As we have disposed of Lockett's claims of PCRA counsel's ineffectiveness and have found them either waived or without merit, we decline to remand this matter for an evidentiary hearing.

Order affirmed. Application for Remand denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/14/2025